685 So.2d 590 (1996)
STATE of Louisiana
v.
Johnny A. McCLAIN.
No. 95-KA-2546.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1996.
Richard Ieyoub, Attorney General of the State of Louisiana and Darryl W. Bubrig, Sr., District Attorney, 25th Judicial District, Pointe-a-la-Hache, and Gilbert V. Andry, III, Assistant District Attorney, New Orleans, for Plaintiff/Appellee.
*591 Peter Barbee, Plaquemines Parish, Indigent Defender Board, Pointe-a-la-Hache, for Defendant/Appellant.
Before ARMSTRONG, PLOTKIN and LANDRIEU, JJ.
ARMSTRONG, Judge.
The defendant, Johnny McClain, was indicted by grand jury for first degree murder, a violation of La. R.S. 14:30. The State subsequently amended the indictment to charge him with second degree murder, a violation of La. R.S. 14:30.1. He was tried by a twelve-member jury which found him guilty of manslaughter. The defendant was sentenced to fifteen years at hard labor. His motion for reconsideration of sentence was denied. The defendant now appeals.
On the afternoon of October 24, 1993, in Empire, Louisiana, the defendant, whose nickname was "Alabama," got into an argument with Bernadette Cipriano, who was also known as "Mother Nature." After he left her trailer, the argument resumed outside at which point Mother Nature swung a broom at the defendant and missed. The defendant struck her several times with his cane, whereupon Mother Nature's daughter Teacher Joseph threw a paint can at him. The defendant then retreated to the trailer where he lived with Rena Joiner.
The defendant came out of the trailer a short time later, and the fight with Mother Nature resumed. Her grandson Glitz Joseph became involved, and the defendant threatened to kill him for taking up for his grandmother. At this point, Harold "Rooster" Collins walked up and told the defendant to stay away from his wife. The defendant pointed his cane in Rooster's face, and Rooster knocked it down. The defendant then pulled a knife and stabbed Rooster several times. Glitz then began hitting the defendant in the back with a stick. The defendant stabbed Glitz in the leg and broke the blade of the knife. The defendant again retreated to his trailer.
Mother Nature and Teacher put Glitz in Teacher's car in order to take him to the hospital; but, due to transmission problems, they could not leave. The defendant came back outside, and Mother Nature picked up a brick. The defendant chased her around the car but stopped. Felton Toulouse came out of a nearby barroom and approached the defendant. They exchanged words, and the defendant pointed his cane in Toulouse's face. Toulouse knocked it away, and the defendant stabbed him. Toulouse then ran from the defendant, who pursued him; and, Toulouse picked up a barstool that was underneath a tree. The defendant also picked up a chair, and the two fought briefly with the two chairs. Toulouse then collapsed. He died later from a stab wound to the chest.
The defendant testified that prior to the altercation with Mother Nature, Toulouse threatened him. He also testified that Mother Nature also had a knife and that the others also had weapons. He stated that he stabbed Toulouse and the others to protect himself.
ERRORS PATENT AND ASSIGNMENT OF ERROR NO. 3:[1]
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, the defendant complains that the trial court erred in overruling his objections to the State's using its peremptory challenges to excuse prospective jurors who were of the same race as the defendant. He argues that the State's use of its peremptory challenges in this manner violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In Batson, the United States Supreme Court adopted a three-part analysis to determine whether a prosecutor exercised peremptory challenges in a discriminatory fashion. First, the defendant must demonstrate a prima facie case of purposeful discrimination. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1722. Second, once the defendant establishes a prima facie case of discrimination, the burden shifts to the prosecution to give race-neutral reasons for the peremptory challenges. Id., 476 U.S. at 97-97, 106 S.Ct. at 1723. Third, after the prosecutor has *592 presented his reasons, the issue of fact is joined; and, the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the peremptory challenges. Id. For a Batson challenge to succeed, it is not enough that a racially discriminatory result be evidenced; rather, that result must be traced to a racially discriminatory purpose. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272. The sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory challenges. Id.
In the present case, the defendant complains about the State's peremptorily challenging five jurors: Arwin Sino, August Dennis, Armond Dinet, Mitchell Encalade, and Espy Encalade. He argues that the State only gave "lip service" to providing raceneutral reasons for its obvious discriminatory intent in excusing these prospective jurors. The defendant points to the State's using five of the six peremptory challenges it exercised to excuse blacks from the jury. It should be noted that as to Espy Encalade, the defendant never actually objected to his being struck by the State. Thus, the defendant's failure to lodge an objection to this prospective juror's dismissal cannot be reviewed on appeal. La.C.Cr. P. art. 841.
As to the first step in the Batson analysis, the defendant must establish that he is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to remove other members of that race from the jury, and that these facts and other relevant circumstances raise an inference that the prosecutor used those challenges to exclude venire persons from the jury because of their race. State v. Collier, 553 So.2d 815 (La.1989).[2] If the defendant fails to make out a prima facie case of racial discrimination, the Batson challenge fails; and, the State does not have to provide race-neutral reasons for the exercise of its peremptory challenges. State v. Green, 94-0887 at p. 24, 655 So.2d at 287-288. To prove his case, the defendant may offer any relevant facts such as the pattern of strikes by the prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of the strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. Id.
In the present case, the trial court did not expressly rule on whether the defendant actually made out a prima facie case of purposeful discrimination regarding the State's use of its peremptory challenges. After the defendant made his objections, the prosecutor went ahead and gave his reasons for excusing the prospective jurors at issue. Hence, this makes moot the preliminary issue of whether the defendant established a prima facie case of discrimination. See Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
The next step of the analysis, the prosecutor's giving of race-neutral reasons, requires that the prosecutor articulate reasons for his challenges that are unrelated to race or other suspect classification. State v. Green, 94-0887 at p. 25, 655 So.2d at 288. This second step does not demand an explanation that is persuasive or even plausible. Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). However, alternative classifications articulated by the prosecutor cannot be practically synonymous with the suspect classification allegedly being discriminated against. Green, 94-0887 at p. 26, 655 So.2d at 289.
In the present case, the State gave race-neutral reasons for striking Sino, Dennis, Dinet, and Encalade. As to Sino, the prosecutor stated that the basis for the challenge was that Sino had been prosecuted two years before in a case in which his fishing license was suspended. In explaining his reason for challenging Dennis, the prosecutor stated that Dennis had previously been on a *593 jury and voted not guilty. As to Dinet, the prosecutor stated that Dinet kept emphatically saying that his mind would not be on the case but would be directed at the prosecutor for not letting him off the jury so that he could take care of his business. As to Encalade, the prosecutor stated that Encalade had prior convictions for wildlife and traffic violations. These reasons given by the prosecutor for the peremptory challenges cannot be considered as readily associated with the suspect class that is alleged to be the object of the prosecutor's discriminatory use of those challenges.
The third and final step of the Batson analysis requires the trial court to determine whether there was purposeful discrimination in the use of peremptory challenges; and, in reaching this decision, the trial court should examine all of the evidence available which involves a comparison of the arguments and the facts in support thereof put forth in the defendant's prima facie case with the raceneutral reasons articulated by the prosecutor. Green, 94-0887 at p. 27, 655 So.2d at 289. This comparison must be made in light of the record, but simple assertions of good faith by the prosecutor are insufficient to counter a valid Batson challenge. Id. It is at this point in the Batson analysis that the persuasiveness of the justification becomes relevant; and, implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. Purkett v. Elem, ___ U.S. at ___, 115 S.Ct. at 1771. A legitimate reason for the exercise of the peremptory challenge is not one that makes sense but one that does not deny equal protection. Id. The ultimate burden of persuasion is on the defendant who must persuade the court that his proof when weighed against the prosecutor's proffered race-neutral reasons is strong enough to establish that discriminatory intent is present. Green, 94-0887 at p. 29, 655 So.2d at 290.
From a review of the record, it does not appear that the defendant carried his burden of persuasion. The race-neutral reasons put forth by the State for excusing the four blacks from the jury outweigh the proof presented by the defendant of purposeful discrimination. Two of the jurors, Sino and Encalade, were excused because of their criminal records. The defendant does not explain how these reasons are implausible or fantastic or how they deny equal protection. The prosecutor's reason for challenging Dennis, which was that he voted not guilty in a different criminal proceeding, also appears to be a legitimate reason and not a pretext for purposeful discrimination. The prosecutor presumably excused Dennis out of a belief that he would be somehow biased against the prosecution, and this justification is plausible. As to Dinet, the prosecutor challenged him because of Dinet's earlier voir dire testimony in which he stated that his mind would not be on the case because he was worried about how his store would run if he were on jury duty for several days. Considering Dinet's statements, the prosecutor was justified in exercising a peremptory challenge to strike Dinet from the jury.
Because the defendant failed to carry his burden of persuasion on the issue of purposeful discrimination, the trial court did not err in overruling the defendant's Batson objections to the State's exercise of its peremptory exceptions. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, the defendant complains that the State failed to prove beyond a reasonable doubt that he did not kill Felton Toulouse in self-defense. He points to the attacks on him by others and to Toulouse's threatening actions. The defendant also points to the fact that he was crippled and walked with a cane and that Toulouse was bigger than he was.
The standard of reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation *594 of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir. 1989).
Manslaughter is a homicide which would be either first or second degree murder, but the killing is committed in "sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" are not separate elements of the offense but are mitigating factors which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986).
A homicide is justifiable if committed by one in defense of himself when he reasonably believes that he is in imminent danger of being killed or receiving great bodily harm and that the homicide is necessary to save himself from that danger. La. R.S. 14:20(1). When a defendant claims selfdefense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Lynch, 436 So.2d 567 (La.1983); State v. Brumfield, 93-2404 (La.App. 4th Cir. 6/15/94), 639 So.2d 312. Regarding self-defense, it is necessary to consider whether the defendant had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save the defendant from that danger. State v. Dozier, 553 So.2d 911 (La. App. 4th Cir.1989), writ denied 558 So.2d 568 (La.1990). Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not the defendant had a reasonable belief that deadly force was necessary to avoid the danger. Id. However, a defendant who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that the defendant desires to withdraw and discontinue the conflict. La. R.S. 14:21.
The State proved beyond a reasonable doubt that defendant did not kill Felton Toulouse in self-defense. The jury must not have believed the defendant's testimony that he was trying to protect himself from being attacked, and this credibility determination appears to be rational considering the other testimony. The defendant had several opportunities to withdraw or retreat from the confrontation since he went back into his trailer on more than one occasion during the incident. The evidence presented by the State showed that the defendant was the aggressor and that defendant did not have a reasonable belief that the killing was necessary to save himself from death or great bodily harm.
We find, that viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime of manslaughter present beyond a reasonable doubt. Accordingly, this assignment of error is without merit.
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] By his third assignment of error the defendant requests a review for errors patent.
[2] Under Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), it may no longer be necessary for the defendant to show that he is a member of a cognizable racial group. See State v. Knighten, 609 So.2d 950 (La.App. 4th Cir.1992); State v. Granier, 592 So.2d 883 (La. App. 4th Cir.1991), writ denied, 600 So.2d 1334 (La.1992).