CHARLES R. JONES, Judge.
 

 I,The appellant, Ricky Ray, seeks review of his conviction and sentence of manslaughter and obstruction of justice relating to the stabbing death of Benjamin Munn (Mr. Munn). Finding that the district court did not err in its judgment, we affirm the judgment and amend the sentence.
 

 The State of Louisiana filed a bill of information, charging Ray with one count each of manslaughter (La. R.S. 14:31) and obstruction of justice (La. R.S. 14:130.1) relating to the stabbing death of Mr. Munn. Ray was arraigned and entered a plea of not guilty. Subsequently, the district court conducted a competency hearing, after which it found Ray incompetent to stand trial and ordered him remanded to the Louisiana Department of Health and Hospitals, Feliciana Forensic Unit. However, within six months Ray was found competent to stand trial after receiving medication.
 

 After the district court denied a motion to suppress the statements given by Ray, the matter proceeded to trial where the prosecution offered various witnesses. Following the trial, the jury unanimously found him guilty of manslaughter. Following his conviction of manslaughter, Ray appeared for trial on the obstruction charge and entered a
 
 nolo contendere
 
 plea on the obstruction charge.
 

 The district court sentenced Ray on the manslaughter count to a term of 30 years at hard labor, stating “without benefit of parole, probation, or suspension of sentence,” which was later removed from the official minutes but not the transcript. | ¡.The district court also sentenced Ray to a term of 20 years at hard labor to run concurrently with the manslaughter sentence for the obstruction charge. Ray requested reconsideration of the manslaughter sentence, but the district court denied the request. However, the district court specified a condition that if the appeal is successful, then Ray could withdraw his
 
 nolo contendere
 
 plea for the obstruction charge. This timely appeal followed.
 

 New Orleans Police Department (NOPD) Homicide Detective Robert Long (Det. Long) was the lead investigator in the homicide of Mr. Munn on May 28, 2008. NOPD Homicide Detective Anthony Pardo (Det. Pardo) conducted a canvass of the neighborhood for potential witnesses and encountered Richard West (Mr. West) who lived adjacent to where the body of Mr. Munn had been found. Det. Pardo noticed that there was blood on the front porch and a screwdriver on the floor inside the residence. Det. Pardo confiscated the screwdriver from the home of Mr. West, who gave a statement that led investigators to interview Ray at his residence across the street. Ray told detectives that he had just awakened and knew nothing about the murder or Mr. Munn. Ray later gave a formal, recorded statement at the Homicide Office.
 

 In the recorded statement, Ray acknowledged that he had been involved in an argument with two other men named “West”
 
 [1]
 
 and “Jeff’ on the night of May 27th. The argument started when “Jeff’ asked Ray for a cigarette, which Ray did not have. “Jeff’ and ‘West” then proceeded to strike Ray, after which an altercation ensued in the street. West” was bleeding from his mouth and returned to his residence. Ray stated that the fight was a
 
 *1001
 
 result of “stupidity,” and that he and “West” were drunk when it occurred. He further stated that he went to sleep around 2:30 a.m., and did not hear anything further about the altercation or struggle outside his residence until he |swas awakened by the police later that morning.
 

 Dr. Paul McGary (Dr. McGary), a forensic pathologist with the Orleans Parish Coroner’s Office, was qualified as an expert in forensic pathology and toxicology. When he performed the autopsy of Mr. Munn on May 28, 2008, he found the presence of both alcohol and cocaine in his system, and that the levels were neither high nor low but would have affected his behavior while alive. Dr. McGary observed ten (10) stab wounds on the chest, shoulder, and left back area. He also identified a deep stab wound to the base of the neck and collar bone, and a large stab wound in the same vicinity. There was also a large laceration on the forehead of Mr. Munn, and another on the back of the head that Dr. McGary determined was caused by a blunt object such as a rode, stick, or axe handle, but concluded those lacerations were not the cause of death. Dr. McGary also observed that none of the wounds of Mr. Munn were defensive, but were inflicted where he was found on the ground, and that Mr. Munn was not able to retreat because he was crippled. Dr. McGary also determined that the first wound was the stab wound to Mr. Munn’s back.
 

 Dr. McGary also opined that Mr. Munn was not running when he was stabbed, and that he was limited in his ability to run because of a deformed left ankle and crippled right ankle. Dr. McGary determined that the murder weapon was a knife at least five and seven eighths inches (“5 and 7/8th”) long, with a blunt side and sharp, serrated side. The weapon was not recovered.
 

 Subsequently, Det. Long received a tip from Crime Stoppers in June of 2008 that Ray knew more about the incident than he originally acknowledged. Det. Long left a message with the mother of Ray for him to provide a second statement. Ray agreed to cooperate, and subsequently gave a second statement at the Homicide Office.
 

 In his second statement, Ray acknowledged that he had witnessed an altercation between a man named John Sparrow (Mr. Sparrow) and Mr. Munn at around 2:30 a.m. or 3:00 a.m. on the morning of May 2, 2008. Ray also admitted that he had initially lied to investigators out of fear of retaliation. He stated that Mr. Sparrow and Mr. Munn worked together for a man named Calvin Stewart (Mr. Stewart), and often argued because Mr. Munn did not like white people, and the two men had gotten into a verbal altercation that morning after drinking heavily on Ray’s porch. After the altercation, Ray advised Mr. Munn to leave the area, at which point Mr. Munn went around the corner of the block. Mr. Munn returned five minutes later with a shovel and told Mr. Sparrow he was going “to get him.” Mr. Munn stuck the shovel in a catch basin and popped the wooden handle off, then struck Mr. Sparrow in the forehead with the shovel, causing him to bleed. At that point, Ray stated, Mr. Sparrow retrieved a knife from his pocket and began stabbing Mr. Munn as Mr. Munn continued to strike him with the shovel handle. Mr. Sparrow then left the scene, and Ray had not seen him since. Ray also stated that Mr. West had been present during the altercation. Ray identified Mr. Sparrow from a six-person photographic lineup complied by Det. Long, who testified that at that point, Ray was not a suspect in the murder.
 

 
 *1002
 
 Five months later in November of 2008, Det. Long learned that Mr. Sparrow and his father, “Big John”, were staying in a hotel in New Orleans East. In early December, Det. Long met with Ray in the Lower Ninth Ward and asked him when he had last seen Mr. Sparrow. In response, Ray told Det. Long that “he had to get something off his chest,” and confessed that it was he who had stabbed Mr. Munn. Det. Long gave Ray his Miranda warnings and transported him back to the Homicide office where he signed a written waiver of rights and gave a third recorded statement.
 

 |sIn his third statement, Ray told Det. Long that he had run into Mr. Munn while walking down the street after work, and asked Mr. Munn if he wanted to purchase some crack cocaine with him. Mr. Munn and Ray went to Ray’s residence where they met Mr. Sparrow, “Big John” and a few other people. Mr. Munn, Mr. Sparrow and Ray smoked crack inside Ray’s residence, and when none was left, Mr. Munn became upset and left the house. “Big John” also left and Ray remained outside on his porch with Mr. Sparrow. Eventually, Mr. Munn returned with a shovel and threatened to harm Mr. Sparrow and Ray, who stated that he feared for his life. Mr. Munn backed off and Ray told him to mind his own business, and that he and Mr. Sparrow did not want to hurt him. Mr. Munn broke the handle of the shovel off in a catch basin and “hit Johnny in the head,” according to Ray.
 

 Ray stated that he saw that Mr. Munn could not get to him and Mr. Sparrow again, and told Mr. Sparrow to attack Mr. Munn from opposite directions so that Mr. Munn could not attack a second time. He and Mr. Sparrow then charged at Mr. Munn and caught him running away. As Mr. Munn ran, he dropped the shovel. Mr. Sparrow positioned himself behind Mr. Munn and Ray, who already had a knife in his hand, and told Mr. Munn to leave them alone because they did not want to hurt him. The two men threw Mr. Munn to the ground and Ray stabbed Mr. Munn five times, and Mr. Sparrow hit Mr. Munn in the head with the shovel handle. Both men then claimed to have killed Mr. Munn, and agreed that Mr. Munn had been trying to kill them. Ray reaffirmed to Mr. Sparrow that he had killed Mr. Munn.
 

 Ray told Det. Long that he killed Mr. Munn because he was afraid Mr. Munn would wait and try to kill him sometime later, stating “I know [ Mr. Munn]
 
 [2]
 
 . I know Ifihow he did time in the jail house and stuff. I know how he act [sic].” Ray also relayed that the murder weapon was a kitchen knife, and he threw it in the dumpster somewhere in New Orleans East after the murder. He described it as a serrated steak knife. Ray stated that he had retrieved the knife after Mr. Munn left out of fear that Mr. Munn would return and do something violent. Ray confirmed that he and Mr. Sparrow chased Mr. Munn after Mr. Munn initially struck Mr. Sparrow in the head with the shovel, and that Mr. Munn had run away from them. Ray also contradicted his initial statement that he knew Mr. Munn was dangerous when he stated “[m]e and [Mr. Munn] ain’t never had a confrontation before. Never ... Now I ain’t know he was gonna act like that.” He acknowledged that he had initially lied to the police about this involvement because he did not want to go to jail for an act he felt was justified. Det. Long placed Ray under arrest for the second-
 
 *1003
 
 degree murder of Mr. Munn based upon his statement.
 

 In the instant appeal, Ray asserts three assignments of error: 1) he was denied due process when the state failed to negate that his admitted action was a reasonable response to the attack by Mr. Munn; 2) the district court imposed a sentence that did not take account of the factors mitigating against a near-maximum sentence, making the sentence unconstitutionally excessive under the circumstances of the case; and 3) the sentence, as articulated by the district court, is an illegal one.
 

 In his first assignment of error, Ray argues that he was denied due process when the state failed to negate that his admitted action was a reasonable response to the attack by Mr. Munn.
 

 In
 
 State v. Gibson,
 
 99-0946, p. 2-3 (La.App. 4 Cir. 5/3/2000) 761 So.2d 670, 675, this Court set forth the standard of review for evaluating the sufficiency of the evidence to support a defendant’s conviction when it stated:
 

 |7The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. at 2789[, 61 L.Ed.2d 560 (1979) ];
 
 State v. Rosiere,
 
 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld.
 
 State v. Mussall,
 
 523 So.2d 1305 (1988).
 

 Ray argues that he was in fear for his life which justified the murder of Mr. Munn, and his actions were pursuant to La. R.S. 14:20, which provides that “a homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm, and killing his necessary to save himself from that danger.”
 

 Ray also does not dispute that he killed Mr. Munn, but he argues that he acted in self-defense for fear for his life because Mr. Munn had initiated an attack with a shovel, striking Mr. Sparrow and then attempted to strike again.
 

 Ray further argues that Mr. Munn was known to have a temper, was easily enraged and capable of killing someone. Ray also argues that he was in fear of his life when Mr. Munn returned and attacked him and Mr. Sparrow with a shovel, and furthermore, he feared that after Mr. Munn left he would attack him at an unforeseen time. For these reasons, he argues that the state did not establish beyond a reasonable doubt that he did not act in self-defense.
 

 The state argues that the conviction of Ray should not be overturned based on Ray’s theory that he killed Mr. Munn to prevent Mr. Munn from killing him or committing a violent or forcible felony against him. The state contends that Ray did not refute the notion that the fatal stabbing of Mr. Munn was not justified by the |sevidence adduced at trial. While Mr. Munn, after an initial confrontation with Mr. Sparrow, did return with a shovel, utter threats, and strike Mr. Sparrow in the head, the state argues that there was no evidence that Mr. Munn attacked Ray or that Ray had any reason to fear that Mr. Munn would do so. Ray had conveyed to Det. Long in his third statement that he and Mr. Munn had not had a confrontation before. Ray also relayed that Mr. Sparrow and Mr. Munn had been in arguments
 
 *1004
 
 before, but never had any physical altercations.
 

 The state also contends that Ray’s claim of self-defense is also undermined by his statement that, after initially attacking Mr. Sparrow, Mr. Munn turned and ran away from Mr. Sparrow and Ray, and that they then proceeded to overtake Mr. Munn, throw him to the ground, and stab him until he was dead. The State further argues that Dr. McGary testified that Mr. Munn suffered a single stab wound to the back, which he concluded was inflicted first. The State argues that the facts reasonably indicate that Ray likely first stabbed Mr. Munn as he attempted to flee. And, the State supports their argument by noting that Dr. McGary testified that Mr. Munn could not ambulate well due to his crippled ankles, and by observing that Dr. McGary testified that Mr. Munn did not have any defensive wounds, and that he was likely unable to move or escape while he was being stabbed repeatedly. The State notes that Ray stated that Mr. Munn was likely no longer armed by the time both he and Mr. Sparrow tackled and stabbed him, that Ray’s assertion that Mr. Munn posed a future threat is questionable because the threat was not imminent. Finally, the State also argues that the amount of force used to subdue Mr. Munn was not justified considering the two-to-one manpower advantage over Mr. Munn.
 

 In the matter
 
 sub judice,
 
 although Ray was charged with second degree murder, the jury convicted him of the responsive verdict of manslaughter, which is defined in LSA-R.S. 14:31(1) as:
 

 liA- homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.
 

 We note that “Sudden passion” and “heat of blood” are not separate elements of the offense, but are mitigating factors which Ray must establish by a preponderance of the evidence. See
 
 State v. McClain,
 
 95-2546 p. 8 (La.App. 4 Cir. 12/11/96), 685 So.2d 590;
 
 State v. Camp,
 
 571 So.2d 195 (La.App. 4 Cir.1990).
 

 As noted by this Court in
 
 State v. McClain,
 
 95-2546 at pp. 8-9, 685 So.2d at 594:
 

 A homicide is justifiable if committed by one in defense of himself when he reasonably believes that he is in imminent danger of being killed or receiving great bodily harm and that the homicide is necessary to save himself from that danger. La. R.S. 14:20(1). When a defendant claims self-defense, the State has the burden of proving beyond a reasonable doubt that Ray did not act in self-defense.
 
 State v. Lynch,
 
 436 So.2d 567 (La.1983);
 
 State v. Brumfield,
 
 93-2404 (La.App. 4 Cir. 6/15/94); 639 So.2d 312. Regarding self-defense, it is necessary to consider whether Ray had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save Ray from that danger.
 
 State v. Dozier,
 
 553 So.2d 911 (La.App. 4 Cir. 1989), writ denied 558 So.2d 568 (La.1990). Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not Ray had a reasonable belief that deadly force was necessary to avoid the danger.
 
 Id.
 
 However, a defendant who is the
 
 *1005
 
 aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that Ray desires to withdraw and discontinue the conflict.
 

 I min this case, the jury did not believe that Ray acted in self-defense and rejected this claim when they found him guilty of manslaughter. Based upon our review of the record, the jury did not err when it rejected the plea of self-defense based upon the testimony of Dr. McGary, stating there were no defensive wounds on Mr. Munn; and, based upon Dr. McGary’s findings that Mr. Munn was also crippled. The jury also took into consideration that Ray disposed of the murder weapon and gave two false statements to the police before finally confessing to the murder when the police were searching for Mr. Sparrow. Based upon the statement given by Ray, he did not confess to the murder initially out of fear of going to prison, having been in prison before for a previous offense.
 

 Therefore, based upon our review of the record in this matter, the district court did not err in convicting Ray of manslaughter. The assignment of error has no merit.
 

 In his second assignment of error, Ray argues that the district court imposed a sentence that did not take into account the mitigating factors against a near-maximum sentence of imprisonment, making the sentence unconstitutionally excessive under the circumstances of this case.
 

 In
 
 State v. Landry,
 
 2003-1671 pp. 4-5 (La.App. 4th Cir.3/31/04) 871 So.2d 1235, 1239, the Court set forth a standard of review for excessive sentencing claims:
 

 La. Const. art. I, § 20 explicitly prohibit excessive sentences.
 
 State v. Baxley,
 
 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment.
 
 State v. Francis,
 
 96-2389, pp. 6-7 (La.App. 4th Cir.4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society.
 
 Baxley,
 
 supra. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.
 
 State v. Johnson,
 
 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d[11672, 676. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 Baxley,
 
 94-2982 at p. 10, 656 So.2d at 979.
 

 As articulated in
 
 State v. Stanfield,
 
 10-0854, p. 6-7 (La.App. 4th Cir.1/19/11) 56 So.3d 428, 430, in reviewing a claim that a sentence is excessive the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C. Cr. Proc. art. 894.1, and whether the sentence is warranted under the facts established by the record.
 
 State v. Trepagnier,
 
 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circum stances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.
 
 State v. Bonicard,
 
 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.
 

 
 *1006
 
 Ray argues that his sentence violates the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment. He first argues that the district court did not consider the mitigating circumstances surrounding the crime when determining his sentence, such as the provocation by Mr. Munn and the minimal criminal background of Ray. He argues that the district court failed to mention that Mr. Munn initiated the attack which is a mitigating circumstance under C. Cr. P. Art. 894.1. Ray also argues that his confession was out of guilt for the offense, and that Mr. Sparrow was not charged as a co-defendant by the State.
 

 The State argues that the district court did not find it credible that Ray acted in self-defense because the stab wounds to Mr. Munn’s back clearly refutes this allegation. Also, the jury unanimously found that the actions of Ray were not justified. The state also argues that Ray attempted to conceal evidence by disposing of the knife |1⅞⅛ a dumpster and lying to the police on two occasions about the incident, even going so far as to frame Mr. Sparrow for the murder. The state also argues that the district court observed that the actions of Ray manifested deliberate cruelty to Mr. Munn, and again, that Ray also admitted in his statement to police that it was not remorse for the death of Mr. Munn, but rather his own concern of going to jail that prompted him to confess.
 

 The sentencing range for manslaughter under LSA-R.S. 14:31 is zero (0) to forty (40) years. The district court sentenced Ray to 30 years which does not exceed maximum sentence. Therefore, the sentence was clearly within the sentencing range.
 

 Ray was convicted of manslaughter by a jury, and the district court sentenced him to 30 years at hard labor, and 15 years at hard labor for an obstruction, to run concurrently. In this instance, the court reviewed all the circumstances regarding the murder of Mr. Munn in using its discretion to impose a proper sentence. Ray argues that the district court did not consider the mitigating circumstances of the murder, giving that Mr. Munn was the initial aggressor, and that Ray had a long history of mental disorders and substance abuse, and that Ray was fearful for his life.
 

 However, again the district court also considered Dr. McGary’s testimony regarding the nature of'the murder, and the testimony. of Det. Long regarding the statements given by Ray, and the fact that he did not confess to the murder for seven months. The court also took into consideration that Ray gave two false statements and disposed of the murder weapon.
 

 Although on appeal Ray referenced case law on excessive sentencing, none supported his argument. Even though Ray had a minimal criminal history, courts have determined that sentencing is not excessive even when an accused has no prior felony convictions and had expressed remorse.
 
 State v. Goins,
 
 920 So.2d 375 (La.App. 2 |13Cir. 1/25/06). Thus, we determine that this assignment of error has no merit, as the sentence imposed was not excessive.
 

 In his third assignment of error
 
 [3]
 
 , Ray argues that the sentence articulated by the district court was an illegal one. Ray argues that under the provision of LA-R.S. 14:31, there is no prohibition of the possibility of probation, parole, or suspension of the sentence.
 

 According to the record, the district court stated, “I’m sentencing you to 30 years in the custody of the Department
 
 *1007
 
 of Corrections without benefit of probation, parole, or suspension of sentence.” [Emphasis added] However, the minute entry does not reflect the transcript. “Where there is discrepancy between the minutes and the transcript, the transcript will prevail.”
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 Therefore, because of the discrepancy between the transcript and the minute entry, we agree that the district court erred in sentencing Ray by adding “without benefit of probation, parole, or suspension of sentence.” While we have earlier found his 30 year sentence is legal, the prohibition of probation, parole, or suspension of sentence is an error on the part of the district court.
 

 Thus, we therefore amend the sentence to reflect that the 30 years in the custody of the Department of Corrections is to be served with benefit of probation, parole, or suspension of sentence.
 

 DECREE
 

 For the above reasons, we affirm the conviction of Ricky Ray for the offense of manslaughter; however, we amend his sentence of 30 years at hard labor to delete the provision of the sentence “without benefit of parole or suspension of sentence.”
 

 AMENDED AND AFFIRMED AS AMENDED.
 

 [1]
 

 . Ray is referring to Richard West who was interviewed by Det. Pardo.
 

 [2]
 

 . Coincidentally, Mr. Munn was nicknamed "Sparrow.” Ray refers to Mr. Munn as "Sparrow” in his final statement to the detectives. However, Mr. Munn and "Mr. Sparrow,” who is referred to in this opinion, are separate individuals.
 

 [3]
 

 . A review of the record revealed that this assignment of error was patent error.