ROLAND L. BELSOME, Judge.
1 ]By a grand jury indictment, the appellant, Eric Ross, was charged with second degree murder. He entered a not guilty *1038 plea and filed a motion to suppress identification. The district court denied the motion to suppress the identification. Following a trial, the appellant was found guilty as.charged by a unanimous jury. Subsequently, the district.court denied the motions for new trial and for post-verdict judgment of acquittal. After waiving delays, the district court sentenced appellant to serve life imprisonment at hard labor without benefits, to run concurrently. His motion for appeal was granted. A motion to reconsider sentence was denied.
On appeal the appellant raises several assignments of error.. In the first and most compelling of those assignments the appellant argues that the trial court erred in permitting the state to introduce Conrad Jackson’s grand jury testimony for purposes of impeaching him.
The appellant was found guilty of a homicide that occurred on October 6, 2008 near the intersection of L.B. Landry and Erie Streets in Algiers. The intersection is near the Fisher Housing Development. On that day, two victims were shot; one survived. The surviving victim would not cooperate with police. [¡/Tips received through Crimestoppers indicated that the SuWu gang was responsible for the shootings, and the appellant is a known member of the SuWu gang.
Conrad Jackson was the only eyewitness that came forward and identified appellant as one of the perpetrators. Mr. Jackson gave a recorded statement to Detective Anthony Pardo, and he also testifíéd before the grand jury detailing the incident and identifying the appellant. At the time that Mr. Jackson appeared in court for the appellant’s trial, he was incarcerated. He admitted to having charges pending against him and to having numerous prior drug convictions. Mr. Jackson then testified that on October 6, 2008, he was on his way to visit his niece in the Ficher Housing Development. From that point forward, Mr. Jackson became unresponsive except to deny seeing appellant shoot the deceased. When pressed by the prosecution, he admitted giving a statement to Detective Pardo; however, he stated that he was just saying whatever the detective wanted to hear. Further, Mr. Jackson also recalled viewing a six-person lineup shown to him by Detective Pardo, but he claimed that he chose appellant’s picture from the lineup simply because he knew appellant and not because he was one of the perpetrators of the homicide.
A portion of his recorded statement was then played for the jury; Mr. Jackson identified his voice on the recording. At that point, the proceedings were stopped, and the district court obtained counsel for Mr. Jackson. Although he attempted to invoke his Fifth Amendment right not to testify, the court ruled that he could not invoke the Fifth Amendment in advance of any potentially perjured testimony. The remainder of his recorded statement was then played for the jury.
13After the statement was played, Mr. Jackson pled the Fifth Amendment when he was asked whether he remembered giving the statement. ■ When asked whether he remembered speaking to Assistant District Attorney Margaret Parker, he was nonresponsive. Mr. Jackson was then declared a hostile witness at the request of the state. Thereafter, he refused to respond to any of the questions that were asked regarding his previous statements about witnessing the murder.
Mr. Jackson also claimed that he did not remember testifying before the grand jury. The prosecution urged the trial court'to allow a transcript of Mr. Jackson’s grand jury testimony to be produced to the jury. Over the objection of defense counsel, the trial court allowed the transcript of the grand jury testimony to be *1039 published for the jury. After the jury reviewed a transcript of his testimony, Mr. Jackson once again claimed not to remember telling the grand jury that the appellant shot the deceased or anything else regarding his grand jury testimony.
The transcript stated that on October 6, 2008, Jackson was headed to the Fisher Housing Development to visit his niece. He was driving his car on a street that runs along the side of the Development; the car in front of him pulled over to the right in front of a corner store. Two people jumped out of the car that pulled over and shot the deceased in front of the store. He personally knew one of the shooters, the appellant.
The issue before this Court is whether the trial court erred in allowing Conrad Jackson’s grand jury testimony to be admitted at trial. La. Const. Art. 5, § 34(A) mandates that the secrecy of grand jury proceedings be provided by law. La.C.Cr.P. art. 433 specifies who may be present during grand jury sessions, while La. C.Cr.P. art. 434 mandates that members of the grand jury, all other persons | ¿present at grand jury sessions, and all persons having confidential access to information concerning grand jury proceedings shall keep secret the testimony of grand jury witnesses, under penalty of contempt.
The four instances in which grand jury testimony may be disclosed under Article 434 are: (1) after the indictment, members of the grand jury and other persons present, may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court; (2) a court may direct disclosure of testimony given before the grand jury to show that a witness committed perjury in his testimony before the grand jury;[1] (3) a witness may discuss his testimony with attorneys for the state and for the person under investigation or indicted, without court permission; and (4) the foreman of a grand jury that discovers a crime may have been committed in another parish after notification to his district attorney, shall make that discovery known to the attorney general, and the district attorney or attorney general may direct any relevant evidence and testimony to the district attorney of another parish. State v. Gutweiler, 2006-2596, p. 14 (La.4/8/08), 979 So.2d 469, 479. In addition to the mandates of La.C.Cr.P. art. 434, a trial court may act upon a specific request stated with particularity and review grand jury transcripts in camera to determine if information contained therein is favorable to the accused and material to guilt or punishment. State v. Trosclair, 443 So.2d 1098 (La.1983). Any party seeking the disclosure of grand jury testimony in any situation other than those allowed by |,⅞La.C.Cr.P. art. 434, is required to show a compelling necessity for the use of the materials. In re Grand Jury, 98-2277 (La.4/13/99), 737 So.2d 1,12.
In the instant case we are not presented with any of the four exceptions that permit the release of the grand jury testimony. The State informed the trial court that they sought to use the testimony to impeach the witness, but there was no specific request stated with particularity, nor was the transcript reviewed in camera by the trial court prior to its publication to the jury. The Supreme Court has said that the secrecy of the grand jury testimo *1040 ny is indispensible and the party seeking disclosure bears the burden of showing his case would be greatly prejudiced or an injustice done without the disclosure. State v. Higgins, 03-1980, p. 35 (La.4/1/05), 898 So.2d 1219, 1241 (citing State v. Tros-clair, supra). After such a showing is made, the decision to disclose the material is within the sound discretion of the trial court. Id. No such showing was made in this case, therefore the admission of Conrad Jackson’s grand jury testimony was an abuse of the trial court’s discretion.
Given that the grand jury testimony admitted by the trial court was from the only person to identify the appellant as the shooter, the gravity of the trial court’s error warrants a new trial. Accordingly, we vacate the appellant’s conviction and sentence and remand the matter for further proceedings.
CONVICTION AND SENTENCE VACATED; REMANDED
LOVE, J., dissents and assigns reasons.

. In State v. Terrebonne, 256 La. 385, 236 So.2d 773 (La. 1970), the court held that the exception in La.C.Cr.P. art. 434 allowing the use of grand jury testimony to show that a witness committed peijury applies to situations where the witness is actually being prosecuted for the crime of peijury.