HUGHES, J.
hWe granted certiorari in this case for the limited purpose of determining whether the appellate court erred in reversing a second degree murder conviction, holding inadmissible at trial the grand jury testimony of a recalcitrant witness, as violative of Louisiana’s grand jury secrecy laws. Finding error in the appellate court decision, we reverse, reinstate the district court conviction and sentence, and remand to the appellate court for consideration of the defendant’s remaining assignments of error.
FACTS AND PROCEDURAL HISTORY
On December 10, 2009, a grand jury indicted the defendant for the October 6, 2008 second degree murder of Albert McClebb, Jr., who was shot to death at the intersection of L.B. Landry and Erie Streets, near the Fischer housing development, in the Algiers neighborhood of New Orleans.[1] Mr. McClebb sustained fourteen gunshot wounds to his torso, upper body, and head.
^Although no eyewitness to the crime initially came forward, on March 26, 2009 Conrad Jackson gave a recorded statement to New Orleans Police Department Detective Anthony Pardo and he testified before a grand jury on December 10, 2009, positively identifying the defendant as one of the shooters. Mr. Jackson also selected the defendant’s picture from a photo lineup.
Mr. Jackson related to authorities that, on the date in question, he was traveling by car to the Fischer housing development to visit his niece, when the car in front of his pulled over by a corner store and two of the occupants emerged. According to Mr. Jackson, the two men then shot the victim and another man, who were standing on the sidewalk. Mr. Jackson stated that he clearly saw the face of one of the shooters and identified him as the defendant. Mr. Jackson was certain of the defendant’s identity as he stated that he had known the defendant since he was a baby. Mr. Jackson indicated that he was hesitant to get involved and did not come forward earlier because he lived in the same neighborhood as the defendant, who he knew to be a gang member. Mr. Jackson later changed his mind about providing information to the police because he felt that violence in the area was getting out of control. Based on the information provided by Mr. Jackson, a warrant was issued for the defendant’s arrest, and he was indicted by a grand jury.
Trial before an Orleans Parish jury commenced on March 14, 2011. It was established by stipulation as to the reports and/or opinions of crime scene technician Elise Donnes, firearms examiner Meredith Acosta, and forensic pathologist Dr. Samantha Huber that: a 9 millimeter handgun and a 45-caliber handgun were used in the shooting; the victim was shot fourteen times, which caused his death; and the victim’s death was a homicide.
The only eyewitness to the crime was Mr. Jackson, who was called to.the stand wearing prison attire. Mr. Jackson admit *935 ted he was facing unrelated criminal drug charges. When the prosecutor asked what he had observed on October 6, [<¡2008, Mr. Jackson replied, “I didn’t observe nothing.” He indicated that he went to the Fisher housing project to see his niece, and a girl told him that somebody had just killed her brother. Mr. Jackson denied seeing anything on his way to visit his niece.
Mr. Jackson claimed that his interview with Detective Pardo was nothing more than him telling the detective “whatever he wanted to hear,” but Mr. Jackson could not recall what he told the detective. Mr. Jackson agreed that Detective Pardo showed him a six-person photographic lineup, but stated that he was only asked if he knew any of the persons depicted and that he indicated that he knew the defendant, but Mr. Jackson maintained at trial that he “didn’t see that dude shoot nobody.”
The prosecution then played a “clip” of Mr. Jackson’s recorded interview with Detective Pardo. After hearing the audio clip, Mr. Jackson acknowledged that it was his voice on the tape. Next, a bench conference was conducted, and the district court judge recessed the trial so that Mr. Jackson could consult with an attorney. Upon resuming the trial, the entirety of Mr. Jackson’s recorded interview with Detective Pardo was played for the jury,[2] wherein Mr. Jackson identified the defendant as the perpetrator and stated that he had picked the defendant out of a photographic line-up. Thereafter, when asked if he recalled giving that statement Mr. Jackson stated, “I plead the Fifth. I ain’t testifying.”
The court instructed Mr. Jackson to answer the prosecutor’s questions, and he responded, “You can do perjury or whatever. I didn’t see that man shoot nobody.” When Mr. Jackson continued to refuse to answer questions, the court granted the prosecutor’s request to treat Mr. Jackson as a hostile witness. After Mr. Jackson persisted in responding to questions with, “I plead the Fifth,” the court Radmonished the witness: “Mr. Jackson, there’s no Fifth Amendment privilege that you can invoke at this time.” In response to succeeding questions, Mr. Jackson continued to answer nonresponsively that he “did not see that man shoot nobody.” Mr. Jackson also repeatedly indicated that he was “not answering no more questions.”
On examination by the defense, Mr. Jackson indicated that had talked with authorities about the instant cáse only because he was facing an unrelated “bunk” drug charge, and he was hoping to get assistance on that matter. On redirect, the prosecutor attempted to explore the possibility that Mr. Jackson feared reprisal if he testified against a known gang member, asking questions about a beating Mr. Jackson had received in prison approximately two months prior to trial, which had required his hospitalization. Mr. Jackson denied the prison fight was related to the instant matter, stating, “That have nothing to do with this dude.” After the prosecution elicited from Mr. Jackson that he did not remember testifying before the grand jury as to the facts of this case, the state published a copy of the transcript of Mr. Jackson’s grand jury testimony to the jury, over the defense’s objection, wherein Mr. Jackson identified the defendant as the murderer.
Assistant District Attorney Margaret Parker also testified that she worked on *936 this case in 2009 and spoke to Mr. Jackson on several occasions. Ms. Parker testified that Mr. Jackson told her that the defendant shot the victim. Ms. Parker also stated that Mr. Jackson indicated to her numerous times (most recently on the day of the trial) that he was very concerned about his personal safety, as well as the safety of his mother and girlfriend, should he testify against the defendant.
Other witnesses who testified at the trial included: Albert McClebb, Sr. (the victim’s father), who identified a photograph of the victim; Detective Kevin Burns, who performed on-scene investigative work on the day of the murder; and Detective Anthony Pardo, who testified about the steps taken in the investigation, |Bthe March 26, 2009 statement made to him by Mr. Jackson in which he identified the defendant as the perpetrator, and Mr. Jackson’s identification of the defendant in a photographic line-up.
After deliberations, the jury unanimously convicted the defendant of the second degree murder of Albert McClebb, Jr. On April 29, 2011, the district court sentenced the defendant to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant’s motions for new trial and post-verdict judgment of acquittal were denied.
On appeal, the defendant’s conviction and sentence were vacated by the appellate court, and the matter was remanded to the district court for a new trial. State v. Ross, 2011-1668 (La.App. 4 Cir. 12/19/12), 144 So.3d 1037, 2012 WL 6621342. Citing Louisiana Constitution Article V, Section 34(A) (providing that the “secrecy” of grand jury proceedings, including the identity of -witnesses, “shall be provided by law”) and LSA-C.Cr.P. art. 434 (providing that all persons having access to grand jury proceedings “shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury”), the majority ruled that, because the disclosure of the grand jury testimony in this case did not fall within the exceptions listed in LSA-C.Cr.P. art. 434 for disclosure of grand jury testimony, the prosecutor was required to show that his case would be “greatly prejudiced or an injustice done without the disclosure,” and no such showing was made. Id. This court subsequently granted the State’s writ application to review the appellate court decision. State v. Ross, 2013-0175 (La.11/15/13), 125 So.3d 1095.
LAW AND ANALYSIS
Louisiana Constitution, Article V, Section 34(A) provides, in pertinent part: “The secrecy of the proceedings, including the identity of witnesses, shall be | ^provided by law.” The secrecy of the grand jury is further provided for in LSA-C.Cr.P. art. 434, which states:
A. Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the *937 attorney general or the district attorney, or with the court.
B. Whenever a grand jury of one parish discovers that a crime may have been committed in another parish of the state, the foreman of that grand jury, after notifying his district attorney, shall make that discovery known to the attorney general. The district attorney or the attorney general may direct to the district attorney of another parish any and all evidence, testimony, and transcripts thereof, received or prepared by the grand jury of the former parish, concerning any offense that may have been committed in the latter parish, for use in such latter parish.
C. Any person who violates the provisions of this article shall be in constructive contempt of court.
[Emphasis added.]
It is a long established policy that the secrecy of grand jury proceedings should be carefully maintained. Many reasons for this have been stated. Secrecy helps to prevent the escape of prospective indictees by providing no forewarning to them of the investigation in progress; it insures that the grand jury investigation can proceed freely by protecting the grand jurors from outside influences and threats of reprisal; it serves to prevent the subordination of perjury and tampering of witnesses by targets of the investigation; it promotes free and open disclosure of information by witnesses without fear of retaliation; and it acts as a shield by protecting innocent people under investigation from the injury to their reputations that could be caused by the disclosure of baseless accusations. However, the [7secrecy of grand jury proceedings is not absolute. This court has stated that in some situations, justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings. In re Grand Jury, 98-2277 (La.4/18/99), 737 So.2d 1, 5; State v. Trosclair, 443 So.2d 1098, 1102 (La.1983), cert, dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).
In determining whether to permit discovery of grand jury transcripts, this court has followed the same approach as the federal courts. The grand jury occupies a high place in the federal system of criminal law — so much so that it is enshrined in the Constitution.[3] It serves the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions. Concern for this dual function underlies the long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts. In re Grand Jury, 737 So.2d at 5-6 (citing Douglas Oil Company of California v. Petrol Stops Northwest, 441 U.S. 211, 218-19, 99 S.Ct. 1667, 1672-73, 60 L.Ed.2d 156 (1979)). This Court has adhered to federal jurisprudence in interpreting state grand jury secrecy laws. In re Grand Jury, 737 So.2d at 8.
The indispensability of grand jury secrecy provisions places a heavy burden on persons seeking disclosure of grand jury materials. A party seeking disclosure has the burden of proving a “compelling necessity” for the material sought, and the need must be demonstrated “"with particularity.” That is, the party seeking disclosure must prove that, without access to the *938 grand jury materials, the party’s case would be “greatly prejudiced” or that an “injustice would be done.” A general wholesale request for transcripts does not satisfy the requirement of demonstrative ^particularized need. In re Grand Jury, 737 So.2d at 8. This Court recognizes the strong public policy in favor of maintaining the secrecy of grand jury proceedings; however, there is also a strong policy in favor of openness in civil, as well as criminal, discovery, and grand jury transcripts often provide a storehouse of relevant facts. Id.
Louisiana grand jury secrecy laws expressly allow for the disclosure of state grand jury materials in the situations provided in LSA-C.Cr.P. art. 434. Outside of those situations, a party seeking disclosure of state grand jury materials must show a compelling necessity for the materials.[4] See In re Grand Jury, 737 So.2d at 5-9; State v. Trosclair, 443 So.2d at 1102-03. This required showing of compelling necessity for the release of grand jury information applies to government attorneys as well as private litigants. See In re Grand Jury, 737 So.2d at 10.
The disclosures expressly permitted by LSA-C.Cr.P. art. 434 include: (1) after the indictment, members of the grand jury and other persons present may reveal (to defense counsel, the attorney general, the district attorney, or the court), and testify concerning, “statutory irregularities” in grand jury proceedings; (2) a court may permit disclosure of testimony given before the grand jury to show that a witness committed perjury in his testimony before the grand jury; (3) a witness may discuss his testimony with the court, attorney general, district attorney, or counsel for the person under investigation or indicted; and (4) after notification to his district attorney, the foreman of a grand jury that discovers a crime may have been committed in another parish shall make that discovery known to the attorney | ^general, and the district attorney or attorney general may direct any relevant evidence and testimony to the district attorney of another parish.[5] See State v. Gutweiler, 2006- *939 2596 (La.4/8/08), 979 So.2d 469, 479; In re Grand Jury, 737 So.2d at 8; State v. Tros-clair, 443 So.2d at 1102-03. See also State v. Poland, 2000-0453 (La.3/16/01), 782 So.2d 556, 558-59.
Another exception to the requirement of grand jury secrecy was established by State v. Peters, 406 So.2d 189 (La.1981). The Peters decision required the prosecutor to disclose a witness’s grand jury testimony to the defendant because that testimony contained material exculpatory evidence that the prosecutor was required to turn over to the defendant under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Thus, State v. Peters recognized that the statutory rule of secrecy of grand jury testimony must yield to constitutional rights. See State v. Poland, 782 So.2d at 559.
Because the disclosure of the grand jury witness testimony in the instant case did not fall within the LSA-C.Cr.P. art. 434 exclusions to the prohibition against disclosure of grand jury testimony, the State was required to establish that, without access to the grand jury testimony, its case would be “greatly prejudiced” or that an “injustice would be done.” See In re Grand Jury, 737 So.2d at 5-9; State v. Troselair, 443 So.2d at 1102-03. In determining whether to permit | mdisclosure of grand jury testimony, a court must balance the continuing need for secrecy against the particularized need for disclosure. The party seeking disclosure has the burden of proving that the need for disclosure outweighs the continuing need for secrecy. If disclosure is permitted, it must be closely confined to the limited portion of the material for which there is particularized need. In any event, disclosure is left to the sound discretion of the trial court and will not be reversed in the absence of an abuse of that discretion. State v. Troselair, 443 So.2d at 1103.
We reject the defendant’s contention that the following cases provide authority for his position that disclosure of grand jury materials for the purpose of obtaining a prior inconsistent statement of, and/or the cross-examination of, a witness is a violation of this state’s secrecy laws: State v. Sheppard, 350 So.2d 615 (La.1977); State v. O’Blanc, 346 So.2d 686 (La.1977); and State v. Ivy, 307 So.2d 587 (La.1975). We recognize that these prior supreme court cases stated that the transcript of grand jury proceedings could not be used at trial even in the conduct of cross-examination (other than a prosecution for perjury), reasoning that the purpose of the rule was not to protect a defendant or witness at a subsequent trial, but to encourage the free disclosure of information about crime. See State v. Sheppard, 350 So.2d at 630-31; State v. O’Blanc, 346 So.2d at 693; State v. Ivy, 307 So.2d at 592. However, as set forth hereinabove, subsequent jurisprudence of this court adopted from the federal jurisprudence the “compelling necessity” test for disclosure of grand jury materials, which allows grand jury testimony to be used in a judicial proceeding, upon demonstration of a party’s need “with particularity” and that, without access to the grand jury materials, the party’s case would be “greatly prejudiced” or that an “injustice would be done.” See In re Grand Jury, 737 So.2d at 5-9; State v. Troselair, 443 So.2d at 1102-03 (citing Douglas Oil Company of California v. Petrol Stops Northwest, 441 U.S. at 218-119,^ 99 S.Ct. 1667). The adoption of the “compelling necessity” test has been indicated in State v. Lacaze, 2012-2131 (La.6/17/13), 117 So.3d 915, 916; State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219,1241, cert, denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005); In re Grand Jury, 737 So.2d at 5-9; and State v. Troselair, 443 So.2d at 1102-03. Thus, we conclude that *940 this court’s more recent jurisprudence implicitly overruled prior jurisprudence which disallowed disclosure of grand jury materials for purposes of obtaining a prior inconsistent statement of, and/or the cross-examination of, a witness and limited such disclosures exclusively to the prosecution of perjury. See also State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 489, writ denied, 99-0802 (La.10/29/99), 748 So.2d 1157, writ denied, 2000-0895 (La.11/17/00), 773 So.2d 732 (ruling that the grand jury testimony of a witness identifying a murder suspect, who could not positively identify the defendant at the subsequent murder trial as the shooter, was admissible as substantive evidence, pursuant to LSA-C.E. art. 801(D)(1)(c), as a non-hearsay statement of identification made after perceiving the person (apparently, no issue was raised relative to grand jury secrecy in that case, as it was not discussed by the court)).
In this case, the record indicates that the district court judge and counsel discussed the prospect of Mr. Jackson’s grand jury testimony being introduced at trial outside the presence of the jury, during an off-the-record recess, at which time the district court judge obviously was apprised of the existence and nature of the grand jury testimony, as reflected in the following colloquy,[6] which took place following the recess but before the jury was returned to the courtroom:
THE COURT:
... I need to put on the record, too, I know Mr. Jackson testified before the grand jury. That is proper impeachment should he fail to acknowledge that he testified before the grand jury. ^[PROSECUTOR]:
Judge, are you saying that the fact of the testimony or the contents of the testimony?
THE COURT:
Contents, as well.
[PROSECUTOR]:
Okay.
THE COURT:
I mean, the issue at that point is Mr. Jackson, from what he’s testified to here now, has said that he never spoke to Detective Pardo and Detective Pardo must have misheard him. And the fact is that if he testified essentially the same in the grand jury without that influence, I think it is a proper admissible document.
[PROSECUTOR]:
My only concern is that without direction from the Court, it’s secret. If you’re willing to let it in, then—
THE COURT:
Just as if it was Brady, I’d let the defense introduce it, as well.
At a later point in the trial, the prosecutor asked Mr. Jackson if he recalled making statements before the grand jury, and Mr. Jackson stated, “I don’t know what he talking about.” Thereafter, the prosecution offered into evidence a redacted ten-page transcript of the Orleans Parish Grand Jury grand jury proceeding for December 10, 2009, which contained only the testimony of Mr. Jackson describing what he witnessed of the October 6, 2008 murder of Mr. McClebb and identifying the defendant as the murderer. The examination of Mr. Jackson, before the grand jury, was conducted by Ms. Parker, and, although several grand jurors asked ques *941 tions of Mr. Jackson, their identity was not disclosed, as the jurors were referenced only as “a juror” or “another juror.”
Under the circumstances, it is apparent from the district court proceedings in this case that the State demonstrated a compelling need for the grand jury material sought, as the sole eyewitness to the crime recanted, at trial, his prior statements identifying the defendant as the murderer. Although the eyewitness’s statement to | isthe police, which was inconsistent with his trial testimony, was introduced at the trial, the grand jury testimony of the witness was made under oath and contained additional details not present in the police statement. Further, only a discrete portion of the grand jury proceeding was introduced into evidence at the defendant’s trial, limited to the hostile witness’s testimony. Thus, we conclude that the jurisprudential prerequisites for disclosure of the grand jury testimony were satisfied in this case.
Accordingly, we reverse the appellate court decision, reinstate the district court conviction and sentence, and remand to the appellate court for consideration of the defendant’s remaining assignments of error.[7]
DECREE
APPELLATE COURT REVERSED; DISTRICT COURT CONVICTION AND SENTENCE REINSTATED; REMANDED TO APPELLATE COURT WITH INSTRUCTIONS.
WEIMER, J., dissents and assigns reasons.

. A second victim, Antoine Jones, was also shot at the same time and survived the shooting, but he subsequently refused to cooperate in the investigation.

. At the time the entire tape of the recorded interview was played for the jury, the prosecutor also offered into evidence a transcript of the recorded interview; the defense counsel indicated that he had "[n]o objection.”

. The Fifth Amendment of the U.S. Constitution states, in pertinent part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger....”

. We note that under consideration in the U.S. Supreme Court case of Douglas Oil Company of California v. Petrol Stops Northwest, upon which this court’s In re Grand Jury and State v. Trosclair opinions rely, was the propriety of the disclosure of grand jury transcripts, outside of those instances authorized by the federal grand jury secrecy law, Federal Rule of Criminal Procedure 6, as directed by a court preliminarily to or in connection with a judicial proceeding. See Douglas Oil Company of California v. Petrol. Stops Northwest, 441 U.S. at 218-24, 99 S.Ct. 1667. Therefore, the adoption by this court of the U.S. Supreme Court’s compelling necessity test was obviously intended to be applied to those instances where LSA-C.Cr.P. art. 434 did not otherwise authorize the disclosure of grand jury materials.

. We note that after the 2011 trial of the defendant, the Louisiana Legislature passed 2012 La. Acts, No. 842, enacting LSA-C.Cr.P. art 434.1, which provides:
A. Notwithstanding the provisions of Article 434, the state may disclose to state or federal prosecutors or law enforcement officers, or to investigators on the staff of the district attorney or attorney general, or to expert witnesses, information and documents provided to a grand jury. Any person to whom such disclosure is made shall not engage in further disclosure of the material and shall use the disclosed material solely for purposes of investigation of criminal offenses and enforcement of criminal laws.
B. The district attorney shall also disclose to the defendant material evidence favorable to the defendant that was presented to the grand jury.
C. The district attorney may also disclose to a witness at trial, including the defendant if the defendant testifies, any statement of the witness before the grand jury that is inconsistent with the testimony of that witness.

. The district court judge and the prosecutor participated in the on-record discussion conducted at this time; however, no comment or objection was recorded from the defense counsel until later in the trial when the grand jury transcript was actually introduced by the prosecutor.

. The appellate court indicated in its opinion that the defendant had raised "several assignments of error,” but the court addressed only the assignment of error asserting that the district court had erred in permitting the State to introduce Mr. Jackson’s grand jury testimony. See State v. Ross, 2011-1668 at p. 1, 144 So.3d at 1120.