After the shooting, defendant claims that he placed the gun on top of his car and ran away confused and scared. When questioned as to why he used the gun, he stated that Mr. Johnson was "trying to kill" him.
According to other witnesses' testimony, at some point Mr. Johnson and defendant *360 exchanged words, resulting in Mr. Johnson throwing a ladder or step-stool either at defendant's vehicle, according to the testimony of Allden Franklin, Lenetria Johnson, and Jujuan Holmes; or, as defendant testified, directly at defendant. Defendant then obtained a gun, either from the console in the interior of his vehicle, as defendant testified, or from the trunk of his vehicle, according to the testimony of Mr. Allden Franklin. The defendant fired several shots at Mr. Johnson, one of which entered Mr. Johnson's back, pierced his aorta, and exited his chest.
The record contains no evidence to show that Mr. Johnson also had a gun on his person. Mr. Allden Franklin testified at trial that he never believed Mr. Johnson was going to kill defendant, because Mr. Johnson didn't have a weapon on him.
The Chief Forensic Pathologist at the Orleans Parish Coroner's Office, Dr. Samantha Huber, testified that the victim had a perforating gunshot wound that entered on the left edge of the back, hit a rib, both lungs, the liver, and the aorta, and exited at the right front of the chest.
Errors Patent
We have reviewed the record for errors patent and have found none.
Assignment of Error Number 1
Defendant asserts that there was insufficient evidence to support the conviction, arguing that the State failed to meet its burden of proving that the killing of Dion Johnson was not committed in self-defense. Defendant argues that the evidence shows Mr. Johnson displayed "violent behavior" and that Mr. Johnson attacked defendant with a ladder or stool. Defendant further points to evidence that Mr. Johnson told defendant: "I'm going to kill you" to support his belief that he was in imminent danger of being harmed by Mr. Johnson and two other men. Defendant claims that he closed his eyes and fired the gun, and he argues that the State failed to present any credible evidence to contradict these facts.
When reviewing a conviction for sufficiency of evidence, this Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Brown , 2012-0626, pp. 6-7 (La. App. 4 Cir. 4/10/13), 115 So.3d 564, 570-71 (citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). See also La. C.Cr.P. art. 821 (B) ("A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."). Brown further explains:
The reviewing court must consider the record as a whole. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. at 1310. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith , 600 So.2d 1319, 1324 (La. 1992).
2012-0626 at p. 7, 115 So.3d at 571. "The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Nellum , 2013-0360, p. 8 (La. App. 4 Cir. 2/12/14), 136 So.3d 120, 125. " '[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.' "
*361 Id. (citing State v. Smith , 600 So.2d 1319, 1324 (La. 1992) ).
In this case, Mr. Daniel was convicted of second degree murder, which is defined as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1 (A)(1). Specific intent is the state of mind that exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10 (1). Specific intent can be formed in an instant, and may be inferred from the circumstances and actions of the defendant. State v. McElveen , 2010-0172, p. 20 (La. App. 4 Cir. 9/28/11), 73 So.3d 1033, 1052. The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Bernard , 2014-0580, p. 12 (La. App. 4 Cir. 6/3/15), 171 So.3d 1063, 1073 ; State v. Seals , 1995-0305, p. 6 (La. 11/25/96), 684 So.2d 368, 373.
The State introduced evidence at trial to show that defendant entered his vehicle, obtained a gun, exited his vehicle, and, after defendant asked Mr. Johnson for defendant's keys, defendant fired six or seven shots in the direction of Mr. Johnson, actions which are sufficient to prove that defendant had specific intent to kill. Bernard , 2014-0580, p. 12, 171 So.3d at 1073. Based on the applicable law and the facts elicited at trial, the fact finder was reasonable in concluding that the State successfully proved defendant had specific intent to kill or inflict great bodily harm when defendant aimed a weapon in the direction of the victim and fired several shots.
Defendant further asserts, however, that the State failed to meet its burden of proving beyond a reasonable doubt that the act was not committed in self-defense, because the evidence shows that the victim , Mr. Johnson, was the aggressor, not defendant. According to defendant, he was kneeling down and shining the wheels on his car when the altercation began. Defendant argues that Mr. Johnson initially displayed violent behavior when he threw a ladder at defendant and said, "I'm going to kill you." Defendant further argues that no witness refuted the fact that Mr. Johnson threatened to kill him, and defendant points out that Jujuan Holmes told the victim to "smoke him." Defendant also claims that he believed that the tattooed man had a gun in his waistband. Further, defendant entered his car with the intent to leave the Car Wash, but he alleges that Mr. Johnson had taken his keys.
The standard of review is whether a rational fact finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in defense of others. State v. Labat , 2012-1210, p. 2 (La. App. 4 Cir. 4/24/13), 115 So.3d 665, 667 (quoting State v. Matthews , 464 So.2d 298, 299 (La. 1985). "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." Id. (citing State v. Wells , 2010-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. "A factfinder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence." Id. (citing State v. James , 2009-1188, p. 4 (La. App. 4 Cir. 2/24/10), 32 So.3d 993, 996 ).
A homicide is justifiable if committed by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1) ;
*362 State v. Ray , 2010-1126, p. 9 (La. App. 4 Cir. 6/29/11), 70 So.3d 998, 1004 (citing State v. McClain , 1995-2546, p. 8 (La. App. 4 Cir. 12/11/96), 685 So.2d 590, 594 ). "[I]t is necessary to consider whether [defendant] had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and whether the killing was necessary, under the circumstances, to save [defendant] from that danger." Id.
It was undisputed at trial that Mr. Johnson, the victim, was not armed. Although the defendant testified that he thought the tattooed man was "clutching" a gun in his waistband, there is no evidence in the record to independently corroborate this assertion. In addition, defendant testified that he exited his car and approached Mr. Johnson to ask for his keys. Based on defendant's own testimony regarding the sequence of events, it was not unreasonable for the jury to conclude that the defendant was not fearing for his life and therefore that the homicide was not committed in self-defense.
The fact that defendant fled the scene after the shooting also does not comport with that of a man who believed he acted in self-defense. "Flight is a circumstance from which guilt can be inferred." State v. Rubens , 2010-1114, p. 7 (La. App. 4 Cir. 11/30/11), 83 So.3d 30, 38.
Based on the evidence presented at trial, it was not unreasonable for the jury to conclude that fleeing the scene constituted evidence of guilt on the part of the defendant. See State v. Gray , 2016-0687, p.9 (La. 3/15/17), 218 So.3d 40, 47 ; see also State v. Fuller , 418 So.2d 591, 593 (La. 1982) (citing State v. Davies , 350 So.2d 586, 588 (La.1977) ). The jury's determination concerning witness credibility is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. James , 2009-1188, p. 4 (La. App. 4 Cir. 2/24/10), 32 So.3d 993, 996.
The forensic evidence offered at trial also shows that Mr. Johnson was shot in the back, not in the front, indicating that it was reasonable to conclude that Mr. Johnson was not approaching defendant when defendant fired shots in Mr. Johnson's direction. This Court rejected a similar self-defense claim in State v. Ventry , 1999-0302, p. 4 (La. App. 4 Cir. 6/14/00), 765 So.2d 1129, 1132, where the forensic evidence showed that the victim was shot in the back of the head. In addition, Detective Nicholas Williams, the lead detective in the present case, testified that the spent bullet casings formed a straight line from where the defendant said he was standing to Mr. Johnson's body, suggesting that Mr. Johnson was fleeing rather than approaching the defendant.
After reviewing the evidence in the light most favorable to the prosecution, we find that the State proved that defendant acted with specific intent to kill and that defendant did not act in self-defense. The evidence was sufficient to support the verdict of guilty of second degree murder, and we find no merit to defendant's first assignment of error.
Assignment of Error Number 2
In defendant's second assignment of error, he argues that the district court should have granted a mistrial when the prosecutor referenced the grand jury proceedings while questioning the defendant. Defendant contends that this violated La. C.Cr.P. art. 434, which mandates secrecy of grand jury proceedings. More specifically, defendant claims that the prosecutor "asked the defendant whether he knew that his girlfriend told the grand jury that the gun he used to kill Nupea was not Nupea's gun" but was the defendant's own gun. Our review of the record does not support defendant's argument, however.
*363 During direct examination, the defendant testified:
I remembered that Nupea [Mr. Johnson] left his gun in my car. I got it out the middle console, but I was still scared to get out [of the car]. I sat there for a second. I reluctantly got out of the car, man. I walked around the back. I looked Nupea straight in the eyes and I said, "Give me my keys, son." [I] heard Jujuan say, "Man, smoke him." Nupea took the ladder and he hummed it at my head. And they were charging towards me so I took the gun out of my pocket and I fired in their direction with my eyes closed, man.
On cross-examination, the prosecutor asked defendant:
Q. At what point did you get your gun?
A. It's not my gun. It's Nupea's gun.
Q. Are you aware that your girlfriend testified before the grand jury about that gun?
Defense counsel then lodged an objection and demanded a mistrial due to the prosecutor's reference to grand jury testimony. The district court sustained the objection but denied defendant's request for a mistrial. The State continued:
Q. Had you talked to your girlfriend about any statements she made regarding that gun?
Defense counsel again objected, but the district court overruled the objection on the basis that the State had not referenced the grand jury in the second question. The defendant invoked his Fifth Amendment privilege and refused to answer the question. The prosecutor then asked:
Q. When did you get the gun?
A. When I was in the car.
The prosecutor did not further question defendant about ownership of the gun or make any additional reference to the testimony of defendant's girlfriend during the grand jury proceedings.
Defendant contends that the Sixth Amendment bars admission of testimonial statements by a witness who did not appear at trial unless the witness is unavailable to testify and the defendant has an opportunity to cross-examine the witness. Davis v. Washington , 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ; Crawford v. Washington , 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Defendant argues that none of the exceptions for disclosing grand jury testimony apply here. Further, defendant cites State v. Ross , 2011-1668 (La. App. 4 Cir. 12/19/12), 144 So.3d 1037, writ granted , 2013-0175 (La. 11/15/13), 125 So.3d 95, rev'd , 2013-0175 (La. 3/25/14), 144 So.3d 932, for the proposition that the exceptions for revealing grand jury testimony are very limited.
In contrast, the State argues that an exception found in La. C.Cr.P. art. 434.1 (C) permitted the prosecutor to refer to the grand jury. Article 434.1 (C) provides: "The district attorney may also disclose to a witness at trial, including the defendant if the defendant testifies, any statement of the witness before the grand jury that is inconsistent with the testimony of that witness."
As to defendant's reference to State v. Ross , we note that in contrast to the facts in Ross , no grand jury "testimony" or "materials" were actually offered in this case. Although the colloquy shows that the prosecutor questioned defendant about his knowledge of his girlfriend's grand jury testimony, the substance of that testimony was never offered or discussed. Thus, Ross does not apply here.
The State's reference in its brief to La. C.Cr.P. art. 434.1 (C) is also misplaced, because Article 434.1 (C) applie *364 s only when impeaching a witness at trial because the witness's statement before the grand jury is inconsistent with the trial testimony. See State v. Taylor , 2018-0192, p. 5 (La. App. 4 Cir. 5/23/18), 247 So.3d 1192, 1195. Here, no actual statement was offered, much less used for impeachment, because the defendant's girlfriend did not testify at trial.
In short, no testimony from the grand jury became a part of the trial record. When the prosecutor asked defendant about the gun a second time and without referencing the grand jury, defendant invoked his Fifth Amendment privilege. No evidence regarding any testimony given before the grand jury was elicited. But even if we determined that the prosecutor's reference to the grand jury was inappropriate under La. C.Cr.P. art. 434, the trial court sustained the defendant's objection immediately after it occurred. Furthermore, if there were any error in the trial court's handling of this issue, that error is harmless, because ownership of the gun had no bearing on defendant's conviction. See State v. Falkins, 2012-1654, pp. 18-19 (La. App. 4 Cir. 7/23/14), 146 So.3d 838, 851 (finding that testimony improperly introduced into evidence is harmless error if it did not contribute to the verdict). We find defendant's second assignment of error has no merit.
Assignment of Error Number 3
In his third assignment of error, defendant contends that the district court erred in admitting a hearsay statement when the prosecution was questioning Jujuan Holmes, a witness to the shooting and a friend of the victim, Mr. Johnson. The prosecutor asked: "Did [Mr. Johnson] say anything to you when [the defendant's] car arrived at the carwash." Mr. Holmes replied: "Yeah. He was like, 'Man, I hope he don't come to my job with all that.' I was like, 'just try to stay away from him.' "
Counsel for defendant objected that the statements were hearsay. The prosecutor indicated that the statements were not hearsay because they were not being offered for the truth of the matter asserted but were a frame of reference for the jury. The district court overruled defense counsel's objection. The prosecutor again asked Mr. Holmes if Mr. Johnson had said, in reference to the defendant, "Get from by my job?" Mr. Holmes said: "He was like, 'Get from here with all that,' like, 'go ahead.' " Counsel for defendant again objected on the basis of hearsay. The prosecution replied that the statement was not being offered for the truth of the matter asserted, but instead for what statements were made immediately before the shooting. The court again overruled the objection. Defense counsel then said: "Please note our exception. And as long as the State is offering them and saying they're not truthful, we don't have a problem."
La. C.E. art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally excluded unless specifically permitted by the Code of Evidence or other legislation (see La. C.E. art. 802 ), because the value a jury places on a statement depends upon its declarant, and the defendant cannot challenge the declarant's credibility by cross-examination or other safeguards of reliability if the declarant is not present at trial. See State v. Martin, 458 So.2d 454, 460 (La.1984) ; State v. Wiltz, 2008-1441, p. 7 (La. App. 4 Cir. 12/16/09), 28 So.3d 554, 559. If the statement is offered for a purpose other than to prove that the matter asserted is true, the statement is not hearsay. Thus, "the value of the statement as evidence does not depend *365 on the credibility of the out-of-court asserter and the statement falls outside of the scope of the hearsay exclusionary rule." Wiltz, 2008-1441, p. 7, 28 So.3d at 559 (internal citations omitted).
La. C.E. art. 803 also provides, in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action.
Under La. C.E. art. 803(3), statements that show the declarant's state of mind are generally admissible if the declarant's state of mind is at issue. State v. Plaisance, 2000-1858, p. 24 (La. App. 4 Cir. 3/6/02), 811 So.2d 1172, 1190.
The exchange among the district court and the attorneys indicates that the statements uttered were not hearsay, because they were not offered for the truth of the matter asserted but rather to show Mr. Johnson's state of mind just prior to the shooting. Additionally, immediately after making two objections as to hearsay, counsel for defendant agreed on the record: "as long as the State is offering them and saying they're not truthful, we don't have a problem. " The prosecution agreed that the statements were not being offered for their truth, and defendant seemingly acquiesced.
Even without defense counsel's acquiescence, we find no error here. In State v. Martin, 458 So.2d at 460, the Louisiana Supreme Court upheld the introduction of hearsay testimony where the victim previously told a witness that she feared the defendant would kill her if she tried to leave him. The Court noted that this testimony was offered as indirect proof of her state of mind, and was relevant because it indicated that "her state of mind was one of fear of the defendant and of anticipation that a certain event might trigger violence against her by the defendant." Id. at 461. Here, as in Martin , the trial court overruled the hearsay objection, and we cannot say the trial court abused its discretion in this regard. "A trial court's ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion." State v. Cyrus, 2011-1175, p. 20 (La. App. 4 Cir. 7/5/12), 97 So.3d 554, 565. Defendant's assignment of error number three is without merit.
Assignment of Error Number 4
In a fourth assignment of error, the defendant complains that he was denied effective assistance of counsel when his attorney failed to object to both prosecutors' closing arguments in which they reminded the jurors of the hearsay statements in Mr. Jujuan Holmes's testimony. Defendant argues that by repeating this testimony during closing arguments, the prosecutors suggested to the jury that defendant was the aggressor, while the victim was depicted as the innocent party.
Ineffective-assistance-of-counsel claims are more properly raised in an application for post-conviction relief where the district court can conduct a full evidentiary hearing on the matter, if one is warranted. See State v. Leger, 2005-0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142 ; State v. Small, 2013-1334, p. 13 (La. App. 4 Cir. 8/27/14), 147 So.3d 1274, 1283. Nevertheless, where the record contains evidence sufficient to decide the issue, and it is raised on appeal by an assignment of error, the court may consider the issue in the *366 interest of judicial economy. Leger, 2005-0011, p. 44, 936 So.2d at 142. We therefore address the issue here.
In Strickland v. Washington , the U.S. Supreme Court established a two-pronged test to attain relief in an ineffective-assistance-of-counsel claim as follows: 1) the defendant must show that counsel's performance was deficient; and 2) this deficiency prejudiced the defense. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). As to the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689, 104 S.Ct. 2052. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 697. Thus, when reviewing a claim of ineffective assistance, an appellate court "does not sit to second-guess strategic and tactical choices made by trial counsel." State v. Myles , 389 So.2d 12, 31 (La. 1980) (on rehearing). Rather, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland , 466 U.S. at 688, 104 S.Ct. 2052. "The benchmark for judging any claim of ineffectiveness is whether the attorney's conduct so undermined the proper function of the adversarial process that the trial cannot be considered to have produced a just result." Id. at 686.
As to the second prong, when determining whether counsel's deficiency prejudiced defendant, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Nevertheless, " 'even if testimony is inadmissible hearsay, if it is merely cumulative or corroborative of other testimony adduced at trial, then the admission of the hearsay is harmless.' " State v. Hamdalla , 2012-1413, p. 12 (La. App. 4 Cir. 10/2/13), 126 So.3d 619, 625 (quoting State v. McIntyre , 381 So.2d 408, 411 (La. 1980) ).
Defendant cites U.S. v. Rusmisel , 716 F.2d 301, 314 (5th Cir. 1983), which held that defense counsel's misconduct at trial (failure to object to the prosecutor's questions about several witnesses' personal drug use) infected the trial with unfairness, and the conviction resulted in a violation of due process. There, the Court of Appeals recognized that the "number, nature, and seriousness of the charges against the defendant, the strength of the prosecution's case, the strength and complexity of the defendant's possible defenses, and the severity of the sentence faced by the defendant are all part of the 'totality of circumstances in the entire record.' " Id. at 305 (quoting Washington v. Watkins , 655 F.2d 1346, 1357 (5th Cir. 1981) ).
We find Rumisel is distinguishable from the facts here. The Court in Rumisel explained how defense counsel's failure to object to the government's questioning of defense witnesses regarding their drug use resulted in a fundamentally unfair trial: "this court is hard pressed to accord the appellation of 'trial strategy' to defense attorney's manner of conducting the trial." Id. at 310.
In contrast to Rumisel , the defendant has failed to establish a claim for ineffective assistance of counsel based upon the failure to object to certain testimony referenced during closing arguments. As seen above, Mr. Johnson's statements to Mr. Holmes immediately before the shooting were not hearsay. And even if the reference to Mr. Johnson's statements were inadmissible hearsay, the reference during closing arguments was harmless error. See State v. Wille, 559 So.2d 1321, 1332 (La. 1990). The test for determining harmless error is whether the reviewing court may conclude the error was harmless *367 beyond a reasonable doubt, i.e., was the guilty verdict actually rendered unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict." State v. Skipper , 2011-1346, p. 10 (La. App. 4 Cir. 10/10/12), 101 So.3d 537, 544.
Again, the evidence offered at trial established that defendant was the shooter and that Mr. Johnson was unarmed. The recitation of the facts by each testifying witness was essentially the same and comported with other evidence to show that defendant entered his car, obtained a gun, exited his car, and shot at an unarmed victim several times. The victim was shot in the back, constituting additional evidence from which the jury may have concluded that the victim was fleeing rather than acting as the aggressor. Considering the totality of the circumstances, it does not appear that defendant suffered any prejudice from the State's closing-argument references to Mr. Johnson's statements made to Jujuan Holmes immediately before the shooting.
We find defendant has failed to establish a claim of ineffective assistance of counsel for counsel's failure to lodge objections during the State's closing arguments.
Assignment of Error Number 5
In a fifth assignment of error, defendant contends that the trial court erroneously charged the jury on the "Stand Your Ground" law as delineated in the justifiable homicide statute, La. R.S. 14:20. Defendant complains that the jury instruction improperly provided in part that "the possibility of retreat is a factor in determining whether or not a person reasonably believes that he or she was in danger of losing his or her life." In contrast, La. R.S. 14:20 (D) reads, in pertinent part, "[n]o finder of fact shall be permitted to consider the possibility of retreat."
In State v. Carter , 1997-2902, p. 34 (La. App. 4 Cir. 5/10/00), 762 So.2d 662, 683, this Court held:
La. C.Cr.P. art. 803 mandates that the trial court instruct the jury as to the law applicable to each case. La. C.Cr.P. art. 807 provides that the State and the defendant shall have the right before argument to submit to the court special written charges for the jury. A requested special charge "shall be given" if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. Id . ; State v. Craig, 95-2499, p. 7 (La. 5/20/97), 699 So.2d 865, 869, cert. denied, Craig v. Louisiana, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). Any special charge must be supported by the evidence. Id. However, such charge need not be given if it is included in the general charge or in another special charge. La. C.Cr.P. art. 807 ; Craig ; State v. Hawkins, 96-0766, p. 8 (La. 1/14/97), 688 So.2d 473, 480. Jury instructions must be considered as a whole. See State v. Thibodeaux, 98-1673, p. 17 (La. 9/8/99), 750 So.2d 916, 929.
The "[f]ailure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right." State v. Tate , 2001-1658, p. 20 (La. 5/20/03), 851 So.2d 921, 937.
Although defendant's brief does not provide the text of the instruction that he requested, the State's brief claims that the defendant requested the following jury instruction:
In Louisiana, the law does not require a person to retreat or consider retreating *368 before using deadly force. Therefore, a person has no duty whatsoever to retreat and may stand his ground and meet force with force. Accordingly, you may not consider the possibility of retreat as a factor in determining whether or not a person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary.
The trial court denied the defendant's requested jury charge, and charged the jury as follows:
A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in eminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger.
The danger need not have been real as long as the defendant reasonably believed that he was in actual danger. There are several factors that you should consider in determining whether the defendant has a reasonable belief that the killing was necessary to save himself from that danger:
1) The possibility of avoiding the necessity of taking human life by retreat, provided however, that a person who is not engaged in any unlawful activity, and is in a place where he has the right to be, has no duty to retreat before using deadly force to save himself from the danger of losing his life or receiving great bodily harm. He may stand his ground and meet force with force.
2) The excitement and confusion of the occasion.
3) The possibility of preventing the danger to himself by using force less than killing.
4) The defendant's knowledge of his assailant's dangerous character. And -
5) Any other factor which related to the reasonable belief that the person charged is in eminent danger of losing his life or receiving great bodily harm, and that the killing was necessary to save himself from that danger.
Thus, if you find that the defendant killed in self-defense, and that the defendant believed he was in danger of losing his life or receiving great bodily harm, and that the defendant believed the killing was necessary to save himself from the danger, and the defendant's beliefs were reasonable in light of the circumstances, then you must find the defendant not guilty.
A person who is not engaged in unlawful activity, and who is in a place he or she has a right to be, shall have no duty to retreat before using force or violence, and may stand his or her ground and meet force with force.
Mere (sic) finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry.
If you find that the defendant has raised the defense that his conduct was justified, the State must prove that the defendant's conduct was not justified. Remember, the State bears the burden of proving the guilt of the defendant beyond a reasonable doubt.
A person who is the aggressor, or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith, and in such manner that his adversary knows, or should know, that he desires to withdraw and discontinue the conflict.
In determining whether the defendant was the aggressor, you must consider *369 the nature of the confrontation, and whether the victim's actions were a reasonable response.
Thus, if you find that the defendant was the aggressor or that he brought on the difficulty, you must reject his claim of self-defense, unless you find that he withdrew from the conflict, and that his withdrawal was in good faith, and that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict.
The "Stand Your Ground" statute, La. R.S. 14:20, with regard to "retreat," provides in pertinent part:
C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent unlawful entry.
Comparing the defendant's requested jury instruction to the wording of the Stand-Your-Ground Law, specifically La. R.S. 14:20 C and D, it is clear that the requested jury instruction is not the proper interpretation of the law. Defendant's proposed instruction suggests that there is no instance in which a defendant may not use deadly force, which does not follow La. R.S. 14:20.
The transcript of the jury charges shows that the district court initially charged the jury that "a person who is not engaged in any unlawful activity, and is in a place where he has the right to be, has no duty to retreat before using deadly force to save himself from the danger of losing his life or receiving great bodily harm. He may stand his ground and meet force with force." In fact, the court so advised the jury two more times during its jury instructions.
Moreover, there is no evidence of juror confusion in the record. During deliberations, the jury sent questions to the trial judge regarding the definitions of heat of blood; provocation; cooling-off period; justifiable homicide; second-degree murder; and responsive verdicts, but the jury did not ask for any clarification regarding the duty to retreat. The court's jury instructions adhere to the law and this assignment of error has no merit.
Assignment of Error Number 6
In his sixth and last assignment of error, defendant fails to cite any legal authority (other than Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ) for his contention that he was denied his right to a fair trial and due process when the State failed to call every witness that the State listed on its witness list. Defendant contends that the State knew that testimony from some of the listed witnesses would have been more favorable to the defendant, but he gives no specific examples or which witnesses would have been favorable to his case or further explains how he was prejudiced. Accordingly, without any specific facts or law upon which to evaluate Defendant's sixth assignment of error, we find this assignment of error has no merit.
CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED