# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-665

**STATE OF LOUISIANA**

**VERSUS**

**KAYLA JEAN GILES COUTEE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 345-209
HONORABLE GREG BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville
Wilson, Judges.

**CONVICTIONS AND SENTENCES AFFIRMED.**

**Jane Hogan**
**Attorney at Law**
**310 North Cherry Street**
**Hammond, LA 70403**
**(985) 542-7730**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Kayla Jean Giles Coutee**

**Honorable Jeff Landry**
**Louisiana Attorney General**
**J. Taylor Gray**
**M. Joseph LeBeau**
**Brooke Harris**
**Assistant Attorneys General**
**PO Box 94005**
**Baton Rouge, La 70804**
**(225) 326-6200**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Kayla Jean Giles Coutee, appeals her conviction for second degree murder and obstruction of justice, violations of La.R.S. 14:30.1 and La.R.S. 14:130.1, respectively, and her sentences of life at hard labor without benefit of probation, parole, or suspension of sentence and thirty years at hard labor, which were ordered to be served consecutively. For the reasons that follow, we affirm Defendant's convictions and sentences.

## FACTS AND PROCEDURAL POSTURE[1]

Defendant and Thomas Coutee were married in 2014. They had one child. Their marriage, however, would not be characterized as harmonious. In 2018, Defendant and Thomas separated.

This separation was not amicable, to say the least. Thomas reported Defendant to law enforcement authorities that Defendant slapped him during a custody exchange. Defendant complained to her friend, Jennifer Dennis, that Thomas slammed a car door on her leg during an exchange. In retaliation, Defendant slapped Thomas. At an August 2018 custody hearing, Defendant indicated that Thomas had jumped at her during an earlier incident.

Mrs. Dennis related that in early 2018, Defendant told her she wanted to kill Thomas and asked if she could borrow a gun. Mrs. Dennis refused to loan Defendant one of her guns. Later, Defendant sent Mrs. Dennis a picture of a black handgun she had purchased. Defendant also asked Mrs. Dennis if she knew anything about self-defense insurance. In August 2018, Defendant sent a message indicating that she had deleted all her social media accounts and that she might "make the news."

---

[1] Our recitation of the facts is derived from the testimony adduced and evidence presented during Defendant's trial.

Later the same month, the Ninth Judicial District Court issued mutual protective orders that, among other things, prohibited them from possessing firearms pursuant to 18 USC § 922(g)(8). Also in August, Defendant began researching Louisiana self-defense law and concealed carry insurance over the internet, both on her computer and on her mobile phone. And on August 27, 2018—contrary to the court's protective order—Defendant purchased a Ruger LCP handgun chambered in .380 ACP from an Academy Sports and Outdoors location in Dallas, Texas. The Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473 obtained by Academy, which is required for all commercial firearms transfers or purchases, indicates that Defendant was not subject to a criminal background check because she held a valid Texas concealed carry permit. Defendant also purchased concealed carry insurance from the U.S. Concealed Carry Association on the same day.

During a custody hearing in August 2018, Defendant accused Thomas of bringing a gun to a custody exchange. During Defendant's trial, Jessica Giles Austin, Defendant's sister, confirmed this accusation.

In the meantime, Thomas filed a pleading seeking a new trial on the district court's custody order, along with a demand for reimbursement of money and an order for contempt. This pleading was served on Defendant on September 7, 2018.

On September 8, 2018, Defendant and Thomas met in a Wal-Mart parking lot in Alexandria, Louisiana, to exchange physical custody of their child. Defendant's children from a previous relationship were going to accompany Thomas on this occasion, as they were going to Chuck E. Cheese's to celebrate the child's birthday. After the children were in his truck, Thomas approached Defendant's vehicle and opened her driver's-side door. Defendant shot Thomas in the chest, killing him. While Defendant described Thomas jumping toward her car

and jerking the door open, Defendant's daughter, A.S., stated that Thomas walked toward the car, which contradicted a recorded statement she had given the police earlier.

Surveillance video obtained from a nearby Sonic restaurant depicted the incident, although the video was taken from afar, and the picture is not of the highest clarity. Defendant was seen closing the rear driver's side door and proceeding to the driver's door. Thomas can be seen walking toward the driver's door. He opened the door. Thomas stepped in a way that he was obscured from the camera by the door. He then stumbled back and fell to the ground.

Defendant remained on the scene after the shooting, called 911, and identified herself to responding officers as the shooter. She was promptly arrested and gave a recorded statement to the police in which she claimed that she shot the victim because she was scared of him.

Approximately two weeks before the incident, Defendant had entrusted her laptop computer to her sister, which Defendant delivered in a flowered bag. Defendant made calls from the jail. Among them was a call to Mrs. Austin, during which Mrs. Austin asked Defendant if someone could take "the flowered thing" from her. Defendant told Mrs. Austin that no one was searching for it and that "it doesn't exist." Mrs. Austin told Defendant she was worried about herself, and Defendant told her, "Give it to Jennifer. Give it to Jennifer."

Mrs. Austin gave the laptop to Mrs. Dennis, who lived in Ouachita Parish. Neither Mrs. Austin nor Mrs. Dennis were asked to damage the computer or delete files from it. The police became aware of the existence of the laptop during their investigation. Detective Curtis Gunter of the Rapides Parish Sheriff's Office obtained the laptop, from which he retrieved a self-defense insurance contract dated September 1, 2018; research on self-defense law dated September 4, 2018; a

3

"Notice of Intent to Relocate with Child," created on September 4, 2018; and a message in August 2018, from Defendant stating that she might make the news and might need a fundraiser for bail money. This message also stated that Defendant had deleted all of her social media accounts.

Mrs. Austin testified that Thomas had been violent in the past and that Defendant was fearful in the weeks leading up to the shooting. She had, however, never witnessed these incidents, though Defendant told her about them. For comparison, it was noted that Thomas was 6'1" tall and weighed 215 pounds and had fought in about a half-dozen mixed martial arts matches. By contrast, Defendant was 5'2" tall and weighed 114 pounds.

The matter proceeded to trial by jury, after which Defendant was found guilty of second degree murder and obstruction of justice. The trial court sentenced Defendant to life imprisonment without benefit of probation, parole, or suspension of sentence for second degree murder and thirty years at hard labor for obstruction of justice. The trial court ordered that the sentences be served consecutively.

## ASSIGNMENTS OF ERROR

Defendant asserts the following as errors of the trial court warranting reversal:

1) The trial court erroneously denied Kayla Giles' motion to strike potential jurors Wilfred Loewer and Brandon Headrick for cause.

2) Kayla Giles received ineffective assistance of counsel due to her trial counsel's refusal to move for a change of venue and failure to consult an expert in intimate partner violence.

3) The trial court erred by failing to grant a hearing on Kayla Giles' motion for new trial.

4) The evidence is insufficient to convict Kayla Giles of second-degree murder or obstruction of justice.

5) The trial court improperly included the aggressor doctrine in the jury instructions.

6) Defendant's thirty-year sentence for obstruction of justice is constitutionally excessive.

## DISCUSSION AND ANALYSIS

*Assignment of error 4*:

When a defendant challenges the sufficiency of the evidence to support her conviction, that issue must be resolved first. *State v. Hearold*, 603 So.2d 731 (La.1992). In reviewing the sufficiency of the evidence, this court must determine "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. We are not allowed to usurp the trier of fact's credibility assessments. *Id.*

Defendant was convicted of second degree murder, a violation of La.R.S. 14: 30.1. The elements of second degree murder are 1) the killing of a human being and 2) when the offender has specific intent to kill or inflict great bodily harm. Defendant does not deny killing Thomas; rather, she has maintained from the beginning that his killing was justified pursuant to La.R.S. 14:20(A)(4)(a):

> A. A homicide is justifiable:
>
> . . . .
>
> (4)(a) When committed by a person lawfully inside a dwelling, a place of business, or a motor vehicle as defined in R.S. 32:1(40) when the conflict began, against a person who is attempting to make an unlawful entry into the dwelling, place of business, or motor vehicle, or who has made an unlawful entry into the dwelling, place of business, or motor vehicle, and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the dwelling, place of business, or motor vehicle.

5

Subsection (B) creates a presumption that:

> a person lawfully inside a dwelling, place of business, or motor vehicle held a reasonable belief that the use of deadly force was necessary to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the dwelling, place of business, or motor vehicle when the conflict began, if both of the following occur:
>
>> (1) The person against whom deadly force was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered the dwelling, place of business, or motor vehicle.
>
>> (2) The person who used deadly force knew or had reason to believe that an unlawful and forcible entry was occurring or had occurred.

However, the presumption created by subsection (B) is rebuttable. *State v. Ingram*, 45,546 (La.App. 2 Cir. 6/22/11), 71 So.3d 437, *writ denied*, 11-1630 (La. 1/11/12), 77 So.3d 947; *State v. Gasser*, 18-531 (La.App. 5 Cir. 7/3/19), 275 So.3d 976, *writ granted on other grounds*, 19-1220 (La. 6/3/20), 296 So.3d 1022. The State is entitled to present evidence that the killing was not reasonable. *Id*. Indeed, when a defendant asserts that she acted in self-defense,[2] the State bears the burden of proving beyond a reasonable doubt that the killing was not justified. *State v. Miller*, 98-642 (La.App. 3 Cir. 10/28/98), 720 So.2d 829, *writ denied*, 98-3119 (La. 5/14/99), 741 So.2d 659.

Reasonableness of the force employed by one claiming self-defense is determined in part by whether the force is proportional to the threat. *State in the Interest of R.R.B.*, 22-397 (La.App. 3 Cir. 10/26/22), 353 So.3d 883, *writ denied*, 22-1725 (La. 3/28/23), 358 So.3d 496. Whether the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the dwelling, place of business, or

---

[2] As a practical matter, the issue presented is broader than "self-defense." Defendant claims Thomas's death was justified pursuant to La.R.S. 14:20(A)(4)(a) to prevent him from unlawfully entering her vehicle. For brevity's sake, however, we will refer to this justification as "self-defense."

motor vehicle requires the consideration of a number of factors, including relative size of the intruder in comparison to the person; the relative combative skills of the intruder and person; the relative physical strength of the two, whether the intruder is armed, and many more. *See State in the Interest of D.S.*, 29,554 (La.App. 2 Cir. 5/7/97), 694 So.2d 565. Whether the victim of the homicide was armed is not dispositive of a defendant's claim that she acted in self-defense, but that fact is a relevant consideration for the trier of fact. *State v. Griffin*, 06-543 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, *writ denied*, 07-2 (La. 9/14/07), 963 So.2d 995. Because La.R.S. 14:20 requires that the use of force be reasonable, every case must be assessed on its own facts; a blanket pronouncement regarding reasonableness must be limited to the facts of the case in which it was decided.[3]

An aggressor may not claim self-defense. La.R.S. 14:21. This will be more fully addressed when we turn to Defendant's fifth assignment of error.

The first element of the charge of second degree murder was not contested by Defendant; she freely admitted that she killed Thomas. Defendant does not contest the intent element, either. Rather, she maintains that her actions were justified.

The jury heard evidence that in the weeks leading up to the incident, Defendant told Mrs. Dennis that she wanted to kill Thomas and asked if she could borrow a gun. The jury heard that shortly before the incident, Defendant

---

[3] For example, in *State v. Mincey*, 08-1315, p. 5 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, 616, this court stated, "responding to an oncoming punch by shooting the other person in the chest is an excessive response." This statement must be taken in the context of two men engaged in a somewhat voluntary altercation outside a bar. The jury convicted the defendant of manslaughter, who argued on appeal that the evidence was insufficient. This court concluded that given the evidence, viewed in the light most favorable to the prosecution, any rational trier of fact could conclude that the use of force was not reasonable. In the context of other situations, this court might conclude that responding to a punch is reasonable under circumstance, for instance, in which the victim of the shooting is more physically robust, possesses greater combative skills, has a reputation for violence, has perpetrated violence on the defender in the past, or any number of other relevant factors. Furthermore, cases such as *Mincey* did not involve the justification found in La.R.S. 14:20(A)(3) at issue in the present matter, and the facts establishing justification are differentiated in the statute.

7

purchased a handgun out-of-state; conducted research into the legality of self-defense in Louisiana; and purchased a policy of self-defense insurance. The jury heard that Defendant messaged a friend and said that she might make the news and might need a crowd-sourced bail fund. It also heard the testimony of Defendant's daughter that Thomas walked to the car and opened the door, rather than lunging or jumping toward it.

More importantly, the jury saw the surveillance video from the Sonic restaurant that showed Thomas approach the car and open the door. The video did not show Thomas lunge or jump at the car or open the car door violently. Defendant got into the car and closed the door. Thomas opened the door and within seconds fell backward to the ground.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Defendant did not act in self-defense. Any reasonable juror could have concluded that Thomas's entry into the vehicle was not forcible pursuant to the presumption established by La.R.S. 14:20(B). The jury was also entitled to reach the conclusion that Thomas was not making an entry into the vehicle such that the use of force resulting in his homicide was justified. This assignment of error lacks merit.

*Assignment of error 1*:

Defendant argues that potential jurors Wilfred Loewer and Brandon Headrick should have been stricken for cause. Pursuant to La.Code Crim.P. art. 797:

> The state or the defendant may challenge a juror for cause on the ground that:
>
> (1) The juror lacks a qualification required by law;
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the

8

defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court; or

(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

A trial court's rulings on challenges for cause are reviewed for abuse of its broad discretion. *State v. Holliday*, 17-1921 (La. 1/29/20), 340 So.3d 648, *cert. denied*, __ U.S. __, 141 S.Ct. 1271 (2021). However, an erroneous ruling that deprives a defendant of her peremptory challenge represents a violation of her substantive rights and is reversible error. *Id.* "'[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses *as a whole* reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.'" *State v. Hallal*, 557 So.2d 1388, 1389-90 (La.1990)(emphasis added)(quoting *State v. Jones*, 474 So.2d 919, 926 (La.1985)). A defendant's case is presumed to have been prejudiced when a challenge for cause was denied and the defendant exhausted her peremptory challenges. *State v. Robertson*, 92-2660 (La. 1/14/94), 630 So.2d 1278.

Defendant exhausted her peremptory challenges during jury selection.

Mr. Loewer testified that his wife had been a victim of crime. His place of business is across the street from the Walmart parking lot. Thomas had been a customer of his employer, Loewer Power Sports, and Mr. Loewer knew him, though not socially. Also, Mr. Loewer was a friend of a witness, Mike Bozeman.

Mr. Loewer saw the extensive pretrial publicity in local media and saw posts on social media about the incident. He had developed an opinion on Defendant's guilt but stated that he could put aside his opinions and information he had seen or read and reach a fair verdict.

Defendant challenged Mr. Loewer for cause. The following colloquy occurred between counsel and the district court:

> MR. WILLSON: Judge, it - this is basically totality of the circumstances. Mr. Loewer was a friend of the victim. He apparently was somewhat of a witness to the incident. As the Court's aware, that's a facility next to Walmart, and he works inside. I - no reason for him to be out there, other than to observe what was going on. He - and his relationship with one of the witnesses is Mr. Bozeman, as well as his relationship with the victim. I, I - you know, I - as I asked him, I've been in there a number of times, and he don't [sic] know me. He knows, he knows Mr. Coutee, and he, and, and he knows Mr. Bozeman for, I think he said, fifteen to twenty years. We just think it - his relationship to the facts in this case is a little too close for him to be fair.
>
> THE COURT: Ms. Harris, your response?
>
> MS. HARRIS: Your Honor, Mr. Loewer was questioned extensively on how he knew the victim, the extent of their relationship, the extent of their communication, and he was adamant that it was really just a professional relationship. He didn't even have the man's phone number, wasn't friends with him on social media. I don't think that that's a sufficient reason to strike him. Also, with Mike Bozeman, I don't - he was adamant that that also wouldn't influence him in any way. And he stated that he could follow the law as applied.
>
> THE COURT: Mr. Loewer was questioned by the Court. He did answer questions that he knew Mike Bozeman, which was a witness - potential witness in this matter, that he is friends, that he does meet him on [sic] social basis, he's last seen him maybe three or four months ago in passing, that this would not affect his ability to be fair and impartial. Also he had known the victim in this matter. That was not socially, but only on a business related matter of the nature of his business with ATVs. Further questioning from the State, Ms. Harris asked him if he would - if he knew the victim could he put that aside, and he answered yes. I did know that - he could put all things aside and, and solely base it on the evidence, he answered yes that [he] would give the defendant the presumption of innocence, answered yes, that he could, if so, render a not guilty verdict. Also in reference to Mr. Bozeman, he would not give greater weight to the testimony of Mr.

Bozeman when Mr. Willson questioned him. Said it was a long time ago that he worked with him, two to three years ago. They had mutual friends. They do nothing together. Again, knew that [sic] the victim - by his business. Based upon the responses of Mr. Loewer, those challenges for cause would be somewhere along the lines of a juror not being impartial whether the cause - whatever the cause of impartiality, that the juror declares that the Court is satisfied that he can render [sic] impartial verdict according to the law and evidence. The Court has watched Mr. Loewer's demeanor as he has answered questions and believes that Mr. Loewer is credible to [sic] his answers, not in any way trying to hide anything or exaggerating that, that the Court will take him for that, his word, and the challenge for cause will be denied. So Mr. Loewer will be juror number twelve at this time.

Mr. Loewer affirmed his ability to put aside his opinions and properly apply the law. We find no merit in the trial court's denial of Defendant's challenge of him.

Brandon Headrick's voir dire examination proved more problematic. Mr. Headrick seemed reluctant to accept the premise that, under Louisiana law, one might be justified in using deadly force "to prevent unlawful entry thereto, or to compel an unlawful intruder to leave the dwelling, place of business, or motor vehicle when the conflict began[.]" La.R.S. 14:20(B). However, on further questioning, Mr. Headrick indicated that he believed that he could apply the law as written. The trial court accepted this and found that Mr. Headrick could apply the law as instructed.

We contrast this with the individual examination of another potential juror, Patrick Williams. Mr. Williams, too, had a problem with the justification statute. He personalized his own divorce and acrimonious relationship with his ex-wife, and indicated that, in his mind, had the justification statute existed at the time of his divorce, his ex-wife would have taken advantage of the law to rid herself of their conflicts. Even though Mr. Williams testified that he thought he could be fair, the court was not convinced that Mr. Williams could put aside his views of statutory justification and render a fair verdict.

Mr. Headrick, on the other hand, testified that he had difficulty with the concept that one could "just open a door and shoot somebody." However, he repeatedly indicated that he could follow the law as instructed by the court. He opined that whether the law applied depended upon the circumstances.

This is exactly what jurors are expected to do: take the law as instructed by the court and apply it to the facts they find have been proven by the evidence.

> A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.

*State v. Taylor*, 03-1834, p. 6 (La. 5/25/04), 875 So.2d 58, 63. The trial court found that Mr. Headrick could follow the law as instructed, and we see no reason to disturb that finding.

Lastly, Michael Chatelain served as the jury foreman. Mr. Chatelain had followed news coverage of the incident and had discussed it with his wife, who knew Thomas and held a favorable opinion of him. Defendant urges that Mr. Chatelain should not have been empaneled because he was biased, but she could not strike him, as she had exhausted her peremptory challenges. However, Defendant made no attempt to challenge Mr. Chatelain for cause; therefore, she failed to preserve any objection to his service or to make Mr. Chatelain's service an exemplar of prejudice because of having to exercise peremptory challenges to Mr. Loewer and Mr. Headrick. This assignment of error lacks merit.

*Assignment of error 2*:

Defendant's case received extensive coverage in local media. She maintains that her trial counsel rendered ineffective assistance in failing to request that the venue of her trial be changed. The failure of counsel to retain an expert in

domestic violence is another ground Defendant cites for the proposition that she received ineffective assistance.

This court has stated:

> The issue of ineffective assistance of counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* If this court considers a claim of ineffective assistance of counsel on appeal, Defendant must satisfy a two-part test. He must first show counsel's performance was deficient and next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*State v. Ervin*, 17-18, p. 7 (La.App. 3 Cir. 12/13/17), 258 So.3d 677, 683.

Prior to trial, Defendant's attorney filed a motion to be allowed additional peremptory challenges and for individual voir dire on the grounds of the extensive news coverage of Defendant's case. Defendant argues that this evidences counsel's knowledge of the degree to which her right to a fair trial was prejudiced by pretrial publicity. However, the record also evidences that counsel wanted to try the case in Rapides Parish for strategic reasons and that he was concerned about how long it might take to go to trial if the venue were changed.

Without knowing the content of pretrial discussion between Defendant and her trial counsel, it would be inappropriate to conclude that counsel's actions regarding venue were deficient. Thus, it is more appropriate for any analysis regarding effective assistance on the issue of a change of venue to be reserved for post-conviction relief rather than on direct appeal. This court finds that the record does not disclose sufficient evidence on this issue.

Defendant cites *State v. Curley*, 16-1708 (La. 6/27/18), 250 So.3d 236, as a mandate that defense attorneys representing survivors of domestic violence must consult with an expert in domestic violence/intimate partner violence. The

13

supreme court has indicated that *Curley* did not establish such a principle. "*Curley* merely applied the existing principles of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to the facts of Curley's case and determined that counsel rendered ineffective assistance of counsel." *State v. Johnson*, 21-1309, p. 1 (La. 12/7/21), 328 So.3d 404, 404.

This assignment of error lacks merit.

*Assignment of error 3*:

Defendant argues that the district court applied the wrong legal standard in denying her motion for new trial, which was based upon ineffective assistance of counsel, principally the failure to consult an expert in domestic violence. Pursuant to La.Code Crim.P. art. 851(B)(3) and (5):

> B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
>
> . . . .
>
> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
>
> . . . .
>
> (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

In making its ruling, the district court gave extensive reasons:

RULING OF THE COURT - MOTION FOR NEW TRIAL

> THE COURT: The Motion for New Trial based upon four contentions, the Court will take them according to how Ms. Hogan has laid it out in her motion. The first one being that the subject of the[] failure to consult or call an expert in Battered Women's Syndrome. The Court has read the [*State v.*] Curley[, 16-1708 (La. 6/27/18), 250 So.3d 236,] decision which the defense has relied upon,

14

that being a Louisiana Supreme Court case, and has also researched whether other courts have relied upon that given that it's only a two-thousand- 28 [sic] eighteen decision, and having not found any. I do highlight the Curley decision where there is [sic] intimate partner's [sic], a death, and reports of abuse. The Curley decision did talk about an extensive testimonial and documentary evidence regarding the abuse the victim perpetrated upon the defendant. Extensive. Extensive being reports over many years, at least six reports back to nineteen-ninety-five. The testimony of the victim's stepdaughter. The victim herself. Defendant called numerous times. Trauma related to the, [sic] blackened eyes, swollen shut. Victim once threw defendant to the ground, kicked in the shoulder. Also in that decision, the actual trial counsel that tried the case did testify. And that he testified that he did not consult. He was unaware. He did not know he could introduce testimony at a hearing. And I understand that Ms. Hogan is asking for a hearing. But in order to do that under the Strickland standard of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness. And the second prong is that [sic] have to show that there was prejudice done.

MS. HOGAN: Your Honor, if I may make a comment.

THE COURT: Yes, ma'am.

MS. HOGAN: Under [*State ex rel Tassin v. Whitley*, 602 So.2d 721 (La.1992)], it talks, it's not cited in my brief, but as far as making a determination as to ineffective assistance of counsel without the benefit of trial counsel, without the benefit of a hearing with trial counsel's testimony and other things presented, I think that any ruling would sort of be in a vacuum because what the Supreme Court has said Tassin v. Whitley is that evidentiary hearings are useful where you can't determine ineffectiveness on the face of the record. And so, I think that in a case where, where testimony could help, that it's the ultimate legal conclusion as to whether counsel was ineffective, an evidentiary hearing should be, should be granted. That's Tassin v. Whitley. So that's what I just wanted to make the Court aware of.

THE COURT: And also in the Curley decision it says the majority, (reading) in this context we otherwise decline to set a rigid foundation requirement, instead leaving those to the sound discretion of a trial court on a case-by-case basis. I also see attached to the defense motion was the proposed evidence of what Ms. Meeks would have been testifying to. That's part of, in fact, if you look at the dissenting opinion in Curley, by Justice Weimer, where part of that ineffective assistance of counsel, failure to call a witness, the petition must name the witness, demonstrate the witness [sic] availability to testify, context of the witness' [sic] proposed testimony, and show the testimony would have been favorable. Justice Weimer in his dissent looking for that [sic]. The question became is that whether the defense met the substantial burden of proof imposed on [sic] by what should

have been in a post-conviction relief proceeding but it's in a new trial proceeding. After being convicted by the jury that heard the evidence including the testimony of the defendant, the claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. That's in <u>Strickland</u> case [sic]. Not enough for the defendant to show that counsel's errors had some conceivable effect on the outcome of the proceeding but the defendant must show that there is a reasonable probability that but for the counsel's unprofessional errors, the result of the proceeding would have been different. Here the jury was presented with factual issues. They were free to accept those theories even to the point of a lesser included offense as included in manslaughter. The jury discounted that. Did not accept that. The self-defense was presented to the jury. The Court finds that the defense has not demonstrated where there was a substandard conduct of reasonableness [sic] by the trial counsel.

Defendant contends that the trial court erroneously applied the *Strickland* standard in deciding the motion for new trial. However, we note that it was Defendant who raised ineffective assistance of counsel at the hearing on the motion for new trial. She cannot now complain because the trial court addressed her concerns.

Defendant contends that a report prepared by Ms. Beth Meeks, a domestic violence expert, should be considered because such an expert should have been retained to testify on her behalf at trial. Ms. Meeks' testimony should have been put forward to "'provide context to Ms. Giles [sic] behavior, interpret behavioral cues demonstrated by Mr. Coutee and enumerate self-defense issues that are specific to abused women.'" She argues that a new trial should be granted on the basis of La.Code Crim.P. art. 851(B)(5).

The supreme court has held that the denial or granting of a motion for new trial based on Article 851(B)(5), presents a question of law that is to be reviewed under an abuse of discretion standard. *State v. Guillory*, 10-1231, (La. 10/8/10), 45 So.3d 612. Pursuant to *Tassin*, Defendant argues, at the least an evidentiary

hearing should be held to assess whether trial counsel's failure to consider retaining an intimate partner abuse expert warrants a new trial.

Again, Defendant relies on *Curley* for the proposition that defense attorneys representing survivors of domestic violence must consult with an expert in domestic violence/intimate partner violence. Again, we note that the supreme court in *Johnson* limited the application of *Curley* to the facts of that case. We also note that *Tassin* involved an application for post-conviction relief, not a motion for new trial. We find no abuse of the trial court's discretion. Defendant couched her application for new trial as an issue of ineffective assistance of counsel. As with our discussion of Defendant's assignment of error 2, we find that her contentions are better addressed in the context of an application for post-conviction relief.

*Assignment of error 5*:

The trial court instructed the jury on the aggressor doctrine:

A person who is the aggressor or who brings on a difficulty cannot claim the right of self defense unless she withdraws from the conflict in good faith and is in such a manner that her adversary knows or should know that she desires to withdraw and discontinue the conflict. In determining whether the defendant was the aggressor, you must consider the nature of the confrontation and whether the victim's actions were a reasonable response. Thus, if you find the defendant was the aggressor or that she brought on the difficulty, you must reject her claim of self defense unless you find: One, that she withdrew from the conflict; and, Two, that her withdrawal was in good faith; and, Three, that the withdrawal [sic] in a manner that put her adversary on notice that she wished to withdraw and discontinue the conflict.

It is unclear exactly what words, if any, Defendant and the victim exchanged immediately before the shooting. Part of the State's theory of the case was that Defendant planned the shooting in advance. Its evidence supporting this included the fact that she purchased the weapon and researched self-defense insurance and the law of self-defense shortly before the shooting. The State also suggested that Defendant had her weapon in hand and effectively ambushed the victim, or at least

the State made this argument in supporting inclusion of the aggressor doctrine in the jury instruction:

> THE COURT: Mr. Clerk, I'll give you that. And then the next objection is the inclusion of the Aggressor Doctrine to the jury instructions, is that correct, Mr. Willson?
>
> MR. WILLSON: Yes, sir.
>
> THE COURT: Any argument on that one?
>
> MR. WILLSON: Well, I think I've already made it. We don't believe it's appropriate because there's no evidence to that effect in the record. And, I think it would just confuse the jury and we don't think it should be included.
> THE COURT: Mr. LeBeau, do you have any response?
>
> MR. LEBEAU: Yes, Judge. We do believe the facts support the inclusion of the aggressor doctrine. We also believe that the law supports the inclusion of the Aggressor Doctrine, and as for the facts, there has been witness testimony that the defendant was in possession of that firearm prior to the shooting, holding and pointing a gun at somebody is clearly an act of aggression in which somebody could respond by approaching and attempting to disarm that person.

Attempting to disarm an armed assailant is not a reasonable response except in the most extreme circumstance. In addition, there was no testimony that directly demonstrated Defendant had the gun in her hand in advance, although police officers testified that given the timing of the incident, Defendant must have had the gun in hand, based upon the type of holster she had and the manner of drawing the weapon from it. Nonetheless, despite whether it would be reasonable to attempt to manually disarm another of a firearm, the jury could safely conclude that the act of pulling a gun on someone without provocation is an inherently aggressive act.

Regardless of whether the trial court erred in instructing the jury on the aggressor doctrine, unless that instruction poses a "structural defect[] in the constitution of the trial mechanism, which [defies] analysis by 'harmless-error' standards[,]" reversal is not mandated. *Arizona v. Fulminante*, 499 U.S. 279, 309,

111 S.Ct. 1246, 1265, (1991). In those situations, the effect of the error is "unmeasurable," and the reviewing court must speculate on whether the error resulted in the jury wrongly convicting the defendant. *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 2083 (1993). These situations are distinguishable from those "trial errors which occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented[.]'" *Id.* (quoting *Fulminate*, 499 U.S. at 307-08).

The State's theory posited that Defendant set a trap for Thomas. The evidence of premeditation has already been discussed, as has the evidence that might indicate Defendant acted with justification. The same evidence that forces us to conclude that any rational finder of fact could have arrived at a guilty verdict also requires us to conclude that the complained-of instruction represents, at worst, a trial error and not a structural defect in the constitution of the trial. This assignment of error lacks merit.

*Assignment of error 6*:

Lastly, Defendant contends that the sentence of thirty years for obstruction of justice and the consecutive sentences imposed violate the Eighth Amendment prohibition against cruel and unusual punishments. She cites a number of cases in which defendants convicted of homicides and obstruction of justice have been sentenced to lesser terms for much more egregious acts of obstruction.

The potential sentence for obstruction of justice, a violation of La.R.S. 14:130.1(B)(1), is a fine of not more than one hundred thousand dollars, imprisonment for not more than forty years at hard labor, or both. Defendant was sentenced to a decade less than the maximum term.

Defendant objected to the sentences when they were imposed and filed a motion to reconsider.

19

"To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. The trial court is vested with wide discretion to sentence a defendant within the range established by the legislature. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-165 (La. 6/30/00), 765 So.2d 1067. Each case presents particular facts, and sentences must be particularized to the offender and the offense. *State v. Smith*, 02-719 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

There was evidence suggesting that Defendant sought to conceal her laptop but not to destroy it. As mentioned during the *Jackson* review, Defendant's failure to destroy the laptop does not lessen her culpability or the seriousness of the offense. The offense is serious because it involves the concealment of evidence related to the commission of second degree murder. Defendant clearly killed the victim but claimed she did so in self-defense. The research Defendant conducted on her laptop called her justification claim into question, as it suggested the possibility that the murder was premeditated.

As for the nature of the offender, the district court considered a number of aggravating and mitigating factors:

> For second degree murder when there is a mandatory sentence, one that is legally required to be imposed, the Court need not justify the sentence under Louisiana Code of Criminal Procedure Article 894.1 for aggravating and mitigating circumstances. However, for the obstruction of justice, the Court must take into consideration the mitigating and aggravating circumstances in the sentencing guidelines

20

which are under Article 894.1(A). When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs: (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime. This is the finding of the Court. (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by her commitment to an institution. This is a finding of the Court. (3) A lesser sentence will deprecate the seriousness of the defendant's crime. This is a finding of the Court. The aggravating and mitigating factors. This Court has looked at the aggravating factors contained in Article 941.1(B) and finds these to be applicable in this case: Number four (4) the offender used her position or status to facilitate a commission of an offense, that being she's asking her sister to hide an important piece of evidence, that being the computer. Eight (8), the offender committed the offense in order to facilitate or conceal the commission of another offense. That again, hiding the computer. Actually, the defense's Sentencing Memorandum refers that, agreeing to this factor as aggravation. Number eleven (11), the offense involved multiple incidents for which separate sentences have not been imposed. Here there is a murder sentence and then there will be an obstruction of justice sentence. Number twenty-one (21), any other relevant aggravating circumstances which would serve for a more severe sentence. In February twenty-twenty, the Court granted permission to the defendant to leave the State of Louisiana to visit her son and his father in Oklahoma. This permission did not include visiting one of her daughters in Oklahoma. At a bond revocation hearing, the Court found that this was made under a false pretense and for possibility to intimidate her daughter, the witness who testified in trial. For this, the defendant was sentenced to thirty days in jail. Again, even though the defendant did not have a criminal record prior to her incarceration in this matter, she has since been arrested for alleged crimes for identity theft, government benefits fraud, criminal conspiracy, and money laundering, all yet to be prosecuted in East Baton Rouge Parish. These all being considered aggravating circumstances. Also the Court has to look to the mitigating factors contained in Article 941.1(B) and finds the following to be applicable to the conviction of obstruction of justice. Defense Sentencing Memorandum refers to number twenty-two (22), the defendant's criminal conduct neither caused nor threatened serious harm. These deal with Kayla and her sister's conversations. Twenty-three (23), the defendant did not contemplate that her criminal conduct would cause or threaten serious harm. Twenty-nine (29), the defendant's criminal conduct was the result of circumstances unlikely to recur. Most likely

that if the defendant is sentenced to life imprisonment, this could possibly not reoccur again. The defendant is particularly likely to respond affirmatively to probationary treatment. With a life sentence, there is no possibility of a probation treatment. The imprisonment of the defendant would entail excessive hardship to herself or her dependents. That, the Court could possibly find given that she has small children that she was taking care of. Any other relevant mitigation circumstances for a less severe sentence. The defendant had a good work history. Employed by the federal government through the Veteran's Administration and even at one time with the Social Security Administration. The defendant has lived an almost completely law abiding life but for the expunged burglary charge in the past. Other mitigating circumstance is that the defendant has been responsible to her family obligations, has taken care of her children. The defendant's military record. Three years of active duty service. Army Reserves. Honorable discharge. The Court finds that those are mitigating in this matter.

Defendant cites *State v. Yelverton*, 12-745 (La. App. 5 Cir. 2/21/13), 156 So.3d 53, *writ denied,* 13-629 (La. 10/11/13), 123 So.3d 1217, in which the defendant received a forty-year sentence for manslaughter and a consecutive sentence of ten years for obstruction of justice; and *State v. Ray*, 10-1126 (La.App. 4 Cir. 6/29/11), 70 So.3d 998, in which the defendant received thirty years for manslaughter and twenty years for obstruction. She also cites the obstruction sentence in *State v. King*, 11-767 (La.App. 5 Cir. 2/28/12), 88 So.3d 1147, *writ denied*, 12-660 (La. 9/14/12), 99 So.3d 35, but it does not appear that Defendant raised an excessiveness claim in that case.

Defendant also surveys three cases cited by the district court: *State v. Dungan*, 54,031 (La.App. 2 Cir. 9/22/21), 327 So.3d 634, *writ denied*, 21-1679 (La. 1/26/22), 332 So.3d 82; *State v. Calloway*, 19-335 (La.App. 5 Cir. 12/30/19), 286 So.3d 1275, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69; and *State v. Cawthorne*, 18-155 (La.App. 3 Cir. 10/3/18), 257 So.3d 717, *writ denied*, 18-1899 (La. 4/8/19), 267 So.3d 607. The State also discusses *Calloway* and *Cawthorne*.

The sentence in *Dungan* resulted from a plea bargain and is not instructive.

In *Calloway*, the defendant was convicted of second degree murder and obstruction of justice from a 2016 homicide in Jefferson Parish. A burned vehicle from which all four wheels had been removed was located in Lafourche Parish and was identified as belonging to the Jefferson Parish victim. Investigators found a black muscle shirt and a RaceTrac drink cup in the vehicle. Surveillance video from a RaceTrac in Houma, Louisiana, where the defendant lived, showed the defendant wearing the shirt and holding a drink cup. A search of the defendant's home recovered a gas can and lug nuts of the same size as the burned car. The defendant's girlfriend pleaded guilty to manslaughter in exchange for her testimony, which indicated that the defendant burned the vehicle to erase evidence of his involvement in the crime. Even though the murder and obstruction of justice arose from the same act or transaction, the trial court ordered the life sentence and the forty-year sentence for obstruction of justice to be served consecutively. The court of appeal affirmed the sentences and the consecutive service based upon the nature of the crimes. Given that the defendant had been sentenced to life, the imposition of a forty-year sentence for obstruction to be served consecutively had no practical effect, and "a remand for resentencing would be 'an academic exercise which has no practical benefit to anyone.'" *Calloway*, 286 So.3d at 1280 (quoting *State v. Funes*, 11-120 (La. App. 5 Cir. 12/28/11), 88 So.3d 490, 510, *writ denied*, 12-290 (La. 5/25/12), 90 So.3d 408).

The eighteen-year-old defendant in *Cawthorne* also burned his murder victim's car after ambushing the victim in his own home, tying and duck taping the victim's hands and feet, and shooting the victim. The defendant then robbed the victim's home of a safe using one of the victim's vehicles, which he burned along with the various tools and clothing used in the robbery after retrieving gold coins

23

and paperwork from the safe. The safe was dumped in a river. The defendant was convicted of second degree murder and obstruction of justice. He was sentenced to life imprisonment for murder and the maximum of forty years for obstruction of justice. The trial court justified its sentence on the nature and severity of the offence and the defendant's refusal to admit any fault. The sentences were upheld.

In *Yelverton*, the defendant shot his victim with no provocation, left the victim in the street to die, disposed of evidence, and cleaned the car in which the victim had been shot. A jury convicted the defendant of manslaughter and obstruction of justice. He was sentenced to forty years at hard labor for manslaughter and ten years for obstruction of justice, to be served consecutively. On appeal, the defendant maintained that the sentences were excessive. The trial court determined that the murder and obstruction were two separate acts; therefore, it imposed consecutive sentences. The fifth circuit found that this did not represent an abuse of the trial court's discretion.

In the present matter, Defendant turned her laptop over to her sister for keeping before the shooting. After the shooting, Defendant's sister told her she was uncomfortable keeping it, and Defendant told her to give it to Ms. Dennis. The secreting of the laptop formed the basis of the charge of obstruction of justice. Without evidence procured from that laptop, the State would have been hampered significantly in investigating and prosecuting the case.

The jury obviously accepted the State's theory that the shooting of Thomas was planned. That shooting took Thomas's life, and Defendant shot him in the presence of her three children, one of whom was Thomas's daughter.

Given the totality of the circumstances, we conclude that the thirty-year sentence for obstruction of justice was not excessive. Further, like the court in

24

*Calloway*, we find that the distinction between serving the sentences consecutively or concurrently is a mere academic exercise with no practical distinction.

**DECREE**

Defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**